# Illinois Official Reports

## Appellate Court

---

### *Moncelle v. McDade*, 2017 IL App (3d) 160579

---

| | |
|---|---|
| Appellate Court Caption | PATRICIA MONCELLE, Individually and as Special Administrator of the Estate of Michael Moncelle, Deceased, Plaintiff-Appellant, v. JUSTICE MARY McDADE, JUSTICE VICKI WRIGHT, and JUSTICE MARY K. O'BRIEN, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-16-0579 |
| Filed | October 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-L-269; the Hon. David A. Brown, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Adrian M. Vuckovich, of Collins, Bargione & Vuckovich, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellees. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. |
| --- | --- |
| | Presiding Justice Hudson and Justice Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1     After the trial court dismissed her lawsuit against the persons and entities she believes caused her husband's death, the plaintiff, Patricia Moncelle, appealed to the Third District Appellate Court. That court affirmed the dismissal. *Moncelle v. C.A.P. Air Freight*, 402 Ill. App. 3d 1204 (2010) (table) (unpublished order under Supreme Court Rule 23). The plaintiff contends that, in issuing that decision, the panel of justices who decided the appeal—Mary McDade, Vicki Wright, and Mary K. O'Brien (collectively, the defendant justices)—deliberately misstated the contents of the record so as to provide support for their decision, which they had prejudged without regard to the facts of the case. The plaintiff made this argument repeatedly during her unsuccessful challenges to the original dismissal and in other contexts. Eventually, the plaintiff filed a lawsuit against the defendant justices. The trial court dismissed the lawsuit for failure to state a claim and on the basis of "judicial and/or sovereign immunity." The plaintiff now appeals that dismissal.[1] We affirm.

¶ 2                       I. BACKGROUND

¶ 3     In late 2004, the plaintiff's husband, Michael Moncelle, died when his vehicle was struck by a truck that belonged to AIR CAP LLC (AIR CAP) and was driven by Matthew F. Gross, an employee of C.A.P. Air Freight (CAP). In 2005, the plaintiff filed suit (the 2005 suit) against Gross, CAP, and AIR CAP (collectively, the trucking defendants), claiming wrongful death and property damage. She asserted that all of the trucking defendants engaged in willful and wanton misconduct, based upon allegations that Gross was under the influence of alcohol and drugs at the time of the collision and that the other trucking defendants had known of his drug addiction but nevertheless had hired him, retained him, and entrusted him with the truck. In her 10-count second amended complaint, the plaintiff also alleged that the trucking defendants had violated federal trucking regulations. The plaintiff sought leave to add prayers for punitive damages to all of the counts, arguing that the inclusion of the allegations regarding federal trucking violations permitted this. The trial court denied leave to seek punitive damages with respect to all of the counts except one count directed toward Gross.

¶ 4     CAP and AIR CAP filed motions for partial summary judgment, seeking rulings that they were not liable for certain of the alleged violations of federal trucking regulations. The motions detailed the specific subparagraphs of the complaint as to which they believed they were

---

[1]Although the appeal was filed in the Third District, all of the justices from that district recused themselves from hearing the appeal. The Illinois Supreme Court assigned the appeal to be heard and decided by the Second District Appellate Court. See *People v. Ortiz*, 196 Ill. 2d 236, 256 (2001) ("[T]his court [(the Illinois Supreme Court)] has the power to assign judges to the various divisions [(Ill. S. Ct. R. 22(b) (eff. Dec. 1, 2008))], a power which we can and do utilize when necessary to assign judges from one district to hear and decide cases originally brought in another.").

entitled to summary judgment. On November 20, 2007, the trial court orally granted summary judgment as to certain subparagraphs in the counts against AIR CAP and some of the counts against CAP. On November 26, the trial court entered a written order, further granting summary judgment as to four other subparagraphs in some of the counts against CAP. The trial court did not grant summary judgment on the entirety of any of the 10 counts—at least some portion of each count remained for trial, which was scheduled for December 3.

¶ 5        On November 29, 2007, CAP filed an amended answer in which it admitted liability for Gross's actions, under a theory of *respondeat superior* (the claim asserted in two counts).[2] That same day, the other trucking defendants obtained leave to file amended answers admitting their liability under the counts directed against them. As a result, damages was the only issue remaining for trial.

¶ 6        The plaintiff advised the trial court that she wished to file a motion to reconsider the court's ruling limiting the availability of punitive damages because case law supported the wider availability of such damages now that the trucking defendants had admitted liability on claims of willful and wanton misconduct. Because the trial date was only four days away, the trial court set a highly expedited briefing schedule, giving the plaintiff only two days to serve a list of the case law on which she relied and requiring her written motion to be filed by 8 a.m. on the day of trial. Rather than engaging in the expedited briefing, on November 30, 2007, the plaintiff moved to voluntarily dismiss the 2005 case. The trial court dismissed the 2005 case without prejudice.

¶ 7        On January 16, 2008, less than two months later, the plaintiff filed a new case against the trucking defendants (the 2008 case). The trucking defendants moved to dismiss the 2008 case, arguing that it was barred by the doctrine of *res judicata*. The trial court granted the motion and dismissed the 2008 case with prejudice. The plaintiff moved for reconsideration.

¶ 8        The plaintiff also filed, in the 2005 case, a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2006)). The petition was based on newly discovered evidence suggesting that Gross had been drinking alcohol at the time of the accident, and it asserted that CAP had attempted to conceal the evidence. The plaintiff argued that, if any of the orders limiting punitive damages or granting partial summary judgment in the 2005 case were final judgments (as the trucking defendants contended in their motion to dismiss the 2008 case), those judgments should be vacated due to CAP's misconduct in concealing the evidence. The trucking defendants moved to dismiss the petition.

¶ 9        In January 2009, the trial court issued a single written order bearing the docket numbers of both the 2005 case and the 2008 case. In that order, the trial court denied the section 2-1401 petition filed in the 2005 case, on the ground that the newly discovered evidence would not have changed the outcome of any of its rulings in that case. It also denied the plaintiff's motion to reconsider its dismissal of the 2008 case.

---

[2]CAP simultaneously filed a motion to dismiss the remaining counts against it, arguing that, because it had admitted liability on the basis of *respondeat superior*, the trial court should dismiss the negligent hiring, retention, and entrustment claims. Before the motion was heard, CAP's attorney stated that, if the trial court denied the motion, CAP would file an amended answer admitting liability under those counts as well. As events transpired, the motion was never decided.

¶ 10    The plaintiff appealed the dismissal of both the 2008 case and the section 2-1401 petition filed in the 2005 case. On April 7, 2010, the defendant justices issued the decision that forms the basis for this suit (the 2010 Rule 23 Order). The decision affirmed the trial court's rulings.

¶ 11    In explaining their decision, the defendant justices framed the question before them as whether CAP and AIR CAP were "entitled to raise *res judicata* as a bar to Plaintiff's 2008 complaint as to all or some of Plaintiff's claims, based on the trial court's order granting *** partial summary judgment on Plaintiff's claims based on" the alleged violations of federal trucking regulations. In explaining their ruling, the defendant justices stated:

> "The trial court's order dismissing the counts in plaintiff's second-amended complaint *** premised on alleged violations of the [federal trucking regulations], was a final judgment on the merits of a separate branch of the controversy. When plaintiff voluntarily dismissed the remainder of her complaint, she triggered the *res judicata* bar to re-filing against those defendants. Accordingly, the trial court's order granting the *** motions to dismiss plaintiff's 2008 complaint is affirmed." *Moncelle*, slip order at 13.

The plaintiff contends that all of the parties repeatedly advised the defendant justices, in briefs and at oral argument, that the entry of partial summary judgment and other rulings had not disposed of any entire counts *or* claims.

¶ 12    The plaintiff filed a petition for rehearing, which was denied, and an application for a certificate of importance, which was likewise denied. (Justice O'Brien dissented from the latter denial.) In both, the plaintiff argued that the defendant justices had known that there was no order in the record matching the description of the "order dismissing the counts" in the 2010 Rule 23 Order and had deliberately fabricated the existence of such an order to conceal their unwarranted determination to affirm the trial court's rulings. The plaintiff then petitioned the Illinois Supreme Court for leave to appeal, repeating her charge that the defendant justices had deliberately misstated the record by saying that "the circuit court had dismissed certain counts of Plaintiff's Second Amended Complaint *** when, in fact, no count was dismissed as to any Defendant." The supreme court denied the petition for leave to appeal.[3]

¶ 13    On September 7, 2012, the plaintiff filed the complaint at issue in this appeal. In it, she alleged that the defendant justices fabricated the "order dismissing the counts" referred to in the 2010 Rule 23 Order through intentional misrepresentations, *i.e.*, statements in the 2010 Rule 23 Order that such an order existed. She alleged that the defendant justices' conduct was criminal—amounting to tampering with public records (720 ILCS 5/32-8 (West 2010)) and official misconduct (720 ILCS 5/33-3 (West 2010))—as well as a breach of their professional ethical obligations under the Rules of Professional Conduct and the Code of Judicial Conduct.

---

[3]Between the supreme court's September 2010 denial of the petition for leave to appeal and the September 2012 filing of the lawsuit before us now, the plaintiff attempted to file a new joint "complaint" in the 2005 and 2008 cases. The complaint named the defendant justices as well as the trucking defendants (although it included no allegations directed against the trucking defendants). The trial court dismissed this "complaint" as unpermitted by the Code inasmuch as final judgments had already been entered in both cases, and this court affirmed the dismissal. See *Moncelle v. C.A.P. Air Freight, Inc.*, 2014 IL App (3d) 130121-U (Second District Appellate Court sitting by assignment from the Illinois Supreme Court). Because that proceeding has no bearing on the issues in this appeal, we do not discuss it further.

Alleging that their conduct caused her harm, *i.e.*, the loss of her cause of action against the trucking defendants, the plaintiff sought compensatory and punitive damages and a finding that the defendant justices were "guilty beyond a reasonable doubt" of fabricating a trial court order.

¶ 14 The defendant justices filed a combined motion to dismiss the case pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)), arguing that the complaint failed to state a claim and that the suit was barred by judicial and sovereign immunity. On July 9, 2014, the trial court granted the motion and dismissed the complaint with prejudice, finding that the defendant justices were entitled to "judicial and/or sovereign immunity." The trial court also found that the complaint failed to state a claim and that it could not be amended to cure the pleading defect. After the trial court denied the plaintiff's motion to reconsider, she filed this appeal.

¶ 15                                             II. ANALYSIS

¶ 16 The trial court dismissed the complaint on two grounds: immunity and the insufficiency of the complaint's allegations. Because we find the issue of judicial immunity dispositive, we confine our analysis to that basis.

¶ 17 Judicial immunity is a matter that can justify the dismissal of a complaint under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)). See *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1039 (1998). In considering whether a complaint was properly dismissed under section 2-619, we take as true all well-pleaded factual allegations of the complaint. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 21. However, we "cannot accept as true mere conclusions unsupported by specific facts." *Id.* ¶ 57. We review the dismissal of the complaint *de novo*. *Id.* ¶ 21.

¶ 18 The common-law doctrine of judicial immunity was first laid down centuries ago as a means of protecting the independence of the judiciary and discouraging inappropriate collateral attacks on judgments. *Forrester v. White*, 484 U.S. 219, 225 (1988) (noting that the doctrine dates back to medieval times). "As early as 1872, the [United States Supreme] Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)). Accordingly, judges are not liable for their judicial acts, "even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley*, 80 U.S. (13 Wall.) at 351.

¶ 19 There are only two exceptions to judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* This exception covers situations in which a judge acted in an administrative capacity, for example. See *Forrester*, 484 U.S. at 228 (no judicial immunity where judge was acting in administrative capacity when he fired the plaintiff probation officer). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. In the latter exception, the term "jurisdiction" refers not to a judge's authority or power to act but to the subject-matter jurisdiction of the court upon which the judge sits. *Bradley*, 80 U.S. (13 Wall.) at 351-52.

¶ 20 The plaintiff argues that the defendant justices' alleged act of fabricating a trial court order was a nonjudicial action. Specifically, the plaintiff contends that the entry of the *appellate* court order—the 2010 Rule 23 Order—was outside of the defendant justices' judicial authority because it had the effect of fabricating a *trial* court order, and appellate judges ordinarily do not enter trial court orders. Thus, she argues, their act was not within the defendants' judicial capacity. However, an act is "judicial," *i.e.*, within a judge's judicial capacity, whenever "it is a function normally performed by a judge" and the parties were dealing with the judge in her judicial role as the arbiter of a controversy. *Stump*, 435 U.S. at 362. That was the case here, where the entry of the 2010 Rule 23 Order was undoubtedly the type of judicial act performed by appellate judges such as the defendants.

¶ 21 The plaintiff argues that, although the entry of an appellate court order may be a judicial act, the utter fabrication of a nonexistent trial court order, done intentionally and without justification (which is what the complaint alleges), cannot be considered a judicial act because judges have no power to take such liberties with the trial court record. We would have no qualms about condemning any such conduct by a judge. However, no lesser body than the United States Supreme Court has held that the plaintiff is wrong: if a court order was the means by which a falsehood was perpetrated, the judge who entered that order is entitled to judicial immunity even though the plaintiff alleges that the judge intentionally fabricated the "facts" contained in the order.

¶ 22 In the seminal case of *Bradley*, as in this case, the plaintiff alleged that a judge who entered an order intentionally misrepresented the facts so as to justify the entry of the order. There, a trial court judge entered an order barring an attorney from appearing in the judge's court. *Bradley*, 80 U.S. (13 Wall.) at 344. As justification, the order stated that the attorney had approached the judge in a hostile manner after a trial, accusing the judge of insulting him from the bench during the trial and threatening the judge with "personal chastisement" (*i.e.*, physical violence). *Id.* The attorney, alleging that his professional livelihood had been damaged by the bar order, sued the judge. His complaint asserted that the statements in the bar order were utterly false and that the judge had "maliciously, corruptly, and unlawfully fabricated the said order to give color and pretence" to the bar order. (Emphasis omitted.) *Id.* at 338.

¶ 23 The Supreme Court found that, regardless of the truth of the matter contained in the order, the judge was absolutely immune from suit. The entry of an order governing the ability of an attorney to appear before him was undoubtedly within the judge's power to regulate his courtroom and was an act undertaken in the judge's judicial capacity. *Id.* at 346-47. That being so, the judge could not be liable in a civil action, "however erroneous the [judge's] act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.* at 347. This immunity applied even though the judicial act in question was "alleged to have been done maliciously or corruptly" and to contain deliberate falsehoods. *Id.* at 351. This same rule applies with equal force here, where the plaintiff alleges that the 2010 Rule 23 Order contained intentionally false statements about the trial court record.

¶ 24 Further, a judge's immunity from suit does not depend on the motives that the plaintiff ascribes to the judge. As the *Bradley* Court noted, litigation frequently arouses powerful emotions, especially in those parties against whom the judge rules, who might be inclined to believe that the ruling against them flowed not from some shortcoming in their arguments but from some improper motive on the part of the judge. "If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint

that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away." *Id.* at 348. Accordingly, the Court held, "[t]he purity of [a judge's] motives cannot \*\*\* be the subject of judicial inquiry." *Id.* at 347.

¶ 25 Here, the parties presented the defendant justices with a controversy to be decided in their judicial capacity, and the defendant justices resolved that controversy by entering an order. Under the Supreme Court's guidance, we determine whether an act is "judicial" by considering whether "it is a function normally performed by a judge" and whether the parties were dealing with the judge in her judicial role. *Stump*, 435 U.S. at 362. Even accepting as true the allegation that the 2010 Rule 23 Order was the means by which the defendant justices deliberately and maliciously fabricated a trial court order, that does not change the fact that the entry of the 2010 Rule 23 Order was itself a judicial act.

¶ 26 In arguing against this conclusion, the plaintiff also points to the magnitude of the loss she has suffered: first she lost her husband in a terrible collision (liability for which all of the trucking defendants admitted), and then she lost her ability to bring her claim, a second deprivation that she argues was caused by the intentional actions of the defendant justices. She argues that it would be a travesty to apply the doctrine of judicial immunity in these circumstances. Once again, however, her argument has been foreclosed by the Supreme Court, which held that judicial immunity applies even where a judge's actions are alleged to have deprived someone of a fundamental right without due process or even any legal authority.

¶ 27 In *Stump*, a mother petitioned a circuit court judge in Indiana to enter an order allowing her 15-year-old daughter to be sterilized, contending that her daughter was "somewhat retarded." *Id.* at 351. The judge entered the order *ex parte*, without appointing a guardian *ad litem* for the daughter or holding a hearing on the petition. *Id.* at 352. The daughter was sterilized the next day without her knowledge, thinking that she was undergoing an appendectomy. When the daughter found out, years later after she was married, that she could not have children, she sued her mother, the mother's attorney, the doctors and the hospital involved, and the judge who had entered the order permitting the sterilization. *Id.* at 353. The trial court dismissed the daughter's claim against the judge on the basis of judicial immunity. *Id.* at 354.

¶ 28 The appellate court reversed on the ground that the judge's actions in entering the order constituted such a serious violation of due process that they could not be said to be within the judge's power or jurisdiction. Not only had the judge ignored the statutorily required procedure for hearing a sterilization petition, but his entry of the order was "an illegitimate exercise of his common law power because of his failure to comply with elementary principles of procedural due process." *Sparkman v. McFarlin*, 552 F.2d 172, 176 (7th Cir. 1977).

¶ 29 The Supreme Court rejected the appellate court's approach:

"This misconceives the doctrine of judicial immunity. A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley*, 13 Wall., at 357, where it stated: '[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff \*\*\*.' " *Stump*, 435 U.S. at 359.

Thus, although the judge in *Stump* had acted far outside the bounds of his legal authority, he was entitled to judicial immunity. "[N]either the procedural errors he may have committed nor

the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions." *Id.* at 359-60. As the judge had acted in his judicial capacity and the court on which he sat had subject-matter jurisdiction over the mother's petition, he was absolutely immune from civil liability.

¶ 30 In this case, it is undisputed that the Third District Appellate Court had subject-matter jurisdiction over the plaintiff's appeal. Further, the entry of the 2010 Rule 23 Order was a judicial act. The defendant justices thus are entitled to judicial immunity against any liability arising from the entry of the 2010 Rule 23 Order, regardless of its contents or their motives in entering it. *Mireles*, 502 U.S. at 12; *Stump*, 435 U.S. at 359-60; see also *Generes v. Foreman*, 277 Ill. App. 3d 353, 356 (1995) (Illinois circuit court judge was immune from suit arising from his entry of an order vacating a dismissal despite the fact that he had previously recused himself from the case). The plaintiff's complaint was correctly dismissed on the basis of judicial immunity.

¶ 31 The application of judicial immunity can appear harsh. Nevertheless, "[d]espite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests" of the public (*Stump*, 435 U.S. at 363):

> "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful." *Bradley*, 80 U.S. (13 Wall.) at 347.

This judicial independence is essential to the functioning of our society.

> "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. [Citation.] The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester*, 484 U.S. at 226-27.

As tragic a loss as the plaintiff suffered, the plaintiff's complaint was correctly dismissed on the basis of judicial immunity.

¶ 32                                             III. CONCLUSION
¶ 33 The judgment of the circuit court of Peoria County is affirmed.


¶ 34 Affirmed.