## Isadore LaBelle, Appellee, v. Grand Central Market Company, Appellant.

### Gen. No. 16,962.

1. LANDLORD AND TENANT—*eviction.* A verdict finding that a tenant has been evicted from a cigar booth is not against the manifest weight of the evidence, where the evidence, although contradictory, tends to show that a detective was stationed before the booth who informed everyone that no sales were being made at that booth, and that subsequently persons were procured who removed the fixtures and stock of goods from the booth and there was further evidence that the tenant had paid his rent and complied with the lease until such eviction.

2. EVIDENCE—*weight.* The use of the phrase "Although but slightly" in an instruction on the preponderance of evidence is not objectionable as misleading.

3. FRAUDS—*statute of—leases.* A lease which is void because of the statute of frauds becomes a month to month tenancy where the

tenant enters into possession and pays the monthly rent agreed upon.

4. LANDLORD AND TENANT—*notice to quit.* A month to month tenant is entitled to notice to quit.

5. DAMAGES—*eviction of tenant.* Where a tenant with his stock and fixtures valued at $480 is evicted from a cigar booth with a most wanton disregard of his rights, a verdict for $1,000 is not excessive.

Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

DUNN & HAYES, for appellant.

CHARLES H. MITCHELL, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

From a judgment rendered by the Superior Court, Cook county, in favor of appellee and against appellant, for $1,000, for damages sustained by an alleged wrongful eviction, the defendant appeals to this court and urges the following reasons as grounds for reversal: 1. The verdict was excessive; 2. The plaintiff's first instruction was erroneous; 3. The verdict is against the weight of the evidence. It appears from the evidence that appellant was the owner of a building located at West Harrison and Loomis streets, Chicago, which was divided into stalls or booths that were leased to retail merchants. This building is called, by the witnesses, a market. One George H. Shank was the builder of the market and an officer of the defendant company, and after September 19, 1908, his son, Edward B. Shank, was the manager of the market. Prior to that date the renting agent was one DeKopski. The plaintiff, LaBelle, applied to DeKopski on the premises for a space in the market for a retail cigar and tobacco stand. DeKopski offered, and LaBelle accepted, a stall near the middle of the market, which DeKopski told LaBelle he could occupy as long

as he wanted to at $30 a month. LaBelle paid $10 down, it being understood that the rent should not begin until September 15, 1908, the day set for the opening of the market to the public. LaBelle then purchased store fixtures, consisting of a ten-foot show case with closed doors, a case for his stock of cigars and tobacco and the other fittings for such a stand, and rented a cash register, all at a cost of about $180, and put in about $300 worth of cigars and tobacco.

After LaBelle had occupied this stall about a week, he became disssatisfied with it and went to George H. Shank, who, LaBelle testified, told him there was a stall in the main aisle on Loomis street which he could have for $40 a month, and that upon that understanding he took possession of the last mentioned stall. He also testified that three days later, September 26, 1908, George H. Shank requested him to move across the aisle to make way for a penny arcade, to which LaBelle agreed, and his fixtures and stock were moved by defendant's employes. LaBelle testified that on that day he paid DeKopski $30 as the balance of the first month's rent; that the receipts for both payments to DeKopski were put into the cash register.

It appears from the testimony of one Newburger, the "house detective" of appellant, that about October 13, 1908, George H. Shank, in the presence of his son, Edward Shank, told the detective to stop LaBelle from selling cigars; "that Mr. Connery has exclusive rights here, and we have to get him out of here." Connery was in the same business as LaBelle, and had two such stands in the market. The detective stationed himself the next morning in front of LaBelle's booth and told everyone who came to buy cigars, that LaBelle was not selling goods that day, and by this means practically stopped LaBelle's sales; that after closing time that night, about eleven or twelve o'clock P. M., the detective, in pursuance of instructions from defendant, procured the aid of the night watchman and

a couple of other employes, and in the absence of La-Belle, removed all his fixtures and stock of goods from the booth and put Connery's fixtures in their place, and thereafter Connery maintained the possession thus obtained; that LaBelle's cigars were moved into a room near the poultry market, where the janitor and others helped themselves to the cigars. George H. Shank denied that he had any talk with LaBelle, and denied that he had anything to do with the moving of LaBelle's goods, and that he talked to Newburger about it. Edward Shank testified that he had no knowledge until about October 15th, that LaBelle had moved from his original stall, and that he then told LaBelle to move back, which LaBelle refused to do, and refused to pay another month's rent, which was then demanded; that thereupon, Shank said, "that if he did not remove his appurtenances in five days, I would have to remove them for him." Shank admitted that he told Newburger, on October 18th, to stand in front of the booth and not allow LaBelle to continue business, and that about October 20th, he directed the janitor force to remove the fixtures. He denied any knowledge as to what became of LaBelle's goods. Upon this evidence the jury found the issues for the plaintiff, and after an examination of the record, we think that the verdict is in accord with the weight of the evidence.

The instruction complained of states, in effect, that while the plaintiff must prove his case by a preponderance of the evidence, "still if the jury believe that the evidence bearing upon the plaintiff's case preponderates in his favor, although but slightly, it would be sufficient for the jury to find the issues in his favor." The use of the words "although but slightly" is objected to as misleading. We think the instruction was proper, under the evidence. It has been approved as a correct statement of law in the following cases: Taylor v. Felsing, 164 Ill. 331; Donley v. Dougherty, 174 Ill. 582; Chicago City Railway Co. v. Bundy, 210 Ill. 39, and Hanchett v. Haas, 219 Ill. 546.

It· is urged that the occupation of LaBelle was a mere tenancy at will or by sufferance, for the alleged reason that the lease was verbal and contrary to the statute of frauds. We cannot agree with this contention. A lease which is void under the statute of frauds becomes a month to month tenancy, and the tenant is entitled to notice to quit, where he enters into possession of the premises agreeing to pay rent monthly, and pays at that rate. (Warner v. Hale, 65 Ill. 395; Sebastian v. Hill, 51 Ill. App. 272; Mollitor v. Thom Van Co., 118 Ill. App. 293.)

If the story told by the plaintiff be true, and it is in most respects corroborated by Newburger, the eviction was a most wanton disregard of the rights of La-Belle. Under such circumstances, we do not regard the amount of the verdict and judgment as excessive. Statutory damages have been asked for by LaBelle's counsel, but we do not think that there is sufficient evidence in the record that the appeal was prosecuted for delay to warrant us in assessing such damages.

The judgment of the Superior Court will be affirmed.

*Affirmed.*