# Illinois Official Reports

## Appellate Court

---

### *Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978

---

| | |
|---|---|
| Appellate Court Caption | JOSEF BOZEK and EVA BOZEK, Plaintiffs-Appellants, v. BANK OF AMERICA, N.A.; PNC BANK, N.A., d/b/a PNC Mortgage as Agent for Bank of America; McCALLA RAYMER LEIBERT PIERCE, LLC, f/k/a Pierce & Associates, P.C.; JUDICIAL SALES CORPORATION; ANNA M. LOFTUS, as a Circuit Judge of Cook County; ANTHONY C. SWANAGAN, as a Circuit Judge of Cook County; THOMAS J. DART, as the Sheriff of Cook County; and JOHN DOES 1-20, Defendants-Appellees. |
| District & No. | First District, Third Division<br>No. 1-19-1978 |
| Filed | September 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-9902; the Hon. Diane M. Shelley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Josef Bozek and Eva Bozek, both of Hinsdale, appellants *pro se*.<br><br>Natalie Burris and Colleen Cavanagh, of Winston & Strawn LLP, of Chicago, for appellee Bank of America, N.A.<br><br>Brian R. Merfeld, of McCalla Raymer Pierce, LLC, of Chicago, for appellee McCalla Raymer Leibert Pierce, LLC. |

Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Paul A. Castiglione, and Ryan Gillespie, Assistant State's Attorneys, of counsel), for appellee Thomas J. Dart.

Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Mary C. LaBrec, Assistant Attorney General, of counsel), for appellees the Hon. Anna Loftus and the Hon. Anthony C. Swanagan.

No brief filed for other appellees.

| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion. Justices McBride and Burke concurred in the judgment and opinion. |
| --- | --- |

## OPINION

¶ 1      What began as a rather straightforward mortgage foreclosure case has morphed into a sprawling civil lawsuit involving a national bank, the sheriff of Cook County, two circuit court judges, and nearly everyone else involved with the foreclosure and attempted eviction of the former homeowners from the property.

¶ 2      In October 2015, Bank of America, N.A. (BoA), obtained summary judgment in a foreclosure lawsuit it had filed against Josef and Eva Bozek, the plaintiffs here. The Bozeks' property was sold at a judicial sale, and an order confirming the sale was entered in November 2016. A lawsuit for forcible entry and detainer followed to evict the Bozeks from the property, which no longer belonged to them. The court in that action entered an order of possession against the Bozeks, and eviction proceedings began (though they were later aborted by the sheriff).

¶ 3      But there was a catch, ultimately a significant one. Over four years into the foreclosure suit, while BoA's motion for summary judgment was awaiting decision, the Bozeks had attempted to remove the case to federal court. The federal judge immediately flagged the notice of removal as untimely and rejected it—that is, the federal court dismissed the action and terminated the litigation in federal court. But the federal court never formally remanded the matter to the circuit court of Cook County. BoA's position before the circuit court was that jurisdiction had now reattached in the circuit court, and the circuit judge agreed. The court thus proceeded to enter summary judgment for BoA, ultimately paving the way for the judicial sale and the later eviction proceeding.

¶ 4      The Bozeks had appealed the circuit court's entry of summary judgment, claiming that the federal court's lack of a formal remand meant that the circuit court never reacquired jurisdiction and the circuit court's resultant orders of summary judgment and confirmation of judicial sale were thus void. A panel of this court agreed and held that the orders of summary

judgment and confirmation of judicial sale were void. See *Bank of America, N.A. v. Bozek*, 2018 IL App (1st) 170386-U, ¶¶ 16, 20 (*Bozek I*).

¶ 5 By the time *Bozek I* was handed down in May 2018, the order of possession in the eviction proceeding had already been entered. The next business day after our decision was filed, the sheriff began to evict the Bozeks from their property. The sheriff aborted, fortunately, just over an hour into it, based on the obvious legal questions raised by the Bozeks.

¶ 6 The Bozeks brought this lawsuit, naming essentially every person or entity involved in the underlying foreclosure and eviction cases as a defendant. They sued BoA, the bank that filed the foreclosure case against the Bozeks; PNC Bank, N.A. (PNC Bank), which may or may not have briefly taken possession of the Bozeks' home following the foreclosure sale; the law firm BoA hired to prosecute its foreclosure case against the Bozeks; Judicial Sales Corporation (JSC), the company that conducted the judicial sale of the Bozeks' home; Judge Anna M. Loftus, the circuit court judge who presided over the foreclosure case; Judge Anthony C. Swanagan, the circuit court judge who oversaw the eviction case; Cook County Sheriff Thomas J. Dart; and 20 John Doe defendants. Against each of those defendants, the Bozeks asserted claims for, among other things, "wrongful foreclosure," wrongful eviction, fraud, consumer fraud, false imprisonment, and a due process violation under 42 U.S.C. § 1983.

¶ 7 The circuit court dismissed the complaint with prejudice on various grounds as to each defendant. For the reasons that follow, we affirm that judgment in all respects.

¶ 8                                       BACKGROUND

¶ 9 On January 26, 2007, the Bozeks obtained a mortgage loan from National City Mortgage (National City) (a division of National City Bank) for $490,000 to purchase property located at 616 The Lane in Hinsdale, Illinois. At some point, National City assigned the mortgage to PNC Bank, which in turn assigned the mortgage to BoA.

¶ 10 In April 2010, the Bozeks defaulted on their mortgage. On November 2, 2010, BoA filed a mortgage foreclosure lawsuit against the Bozeks in the circuit court of Cook County. That case was prosecuted by defendant, the law firm of McCalla Raymer Leibert Pierce, LLC, formerly known as Pierce & Associates, P.C. (the McCalla firm).

¶ 11 On July 31, 2015, the Bozeks filed a notice of removal in the United States District Court for the Northern District of Illinois. On August 25, 2015, the federal court—Judge Blakey— entered a minute order dismissing the Bozeks' case. The order stated in full:

> "On 7/31/15, Josef Bozek filed a notice of removal, attempting to remove to this Court Case No. 10 CH 47361, which he represents is pending in the Circuit Court of Cook County's Chancery Division. He did not attach a copy of the complaint to the removal petition. However, given that the case was apparently initiated in 2010 (which we know because of the case number), it seems highly unlikely that the procedural requirements of the removal statute are met. See, *e.g.*, 28 U.S.C. Section 1446(b) (requiring the notice of removal to be filed within 30 days after receipt by the defendant of the initial pleading). Certainly, the notice of removal does not permit the Court to conclude that the requirements for removal are met. Accordingly, the case is dismissed without prejudice. Civil case terminated."

What is of note here is that, while Judge Blakey obviously did not believe the notice of removal was timely—coming nearly five years into the foreclosure lawsuit, when removals must occur

within 30 days of a lawsuit's receipt by the defendant—the order did *not* include a formal remand of the case to the circuit court.

¶ 12    In light of that ruling from the federal court, proceedings in state court resumed. On October 28, 2015, the circuit court entered separate orders granting motions for summary judgment, reformation of deed, and judgment of foreclosure that BoA had filed before the Bozeks' removal attempt. The same day, the court entered an order appointing JSC selling officer for the purpose of conducting a public auction of the Bozeks' home.

¶ 13    In November 2015, the Bozeks filed a motion to vacate, arguing that the circuit court lacked jurisdiction to enter the orders because the federal court had yet to formally remand the case to the circuit court. On January 6, 2016, Judge Loftus denied the Bozeks' motion.

¶ 14    On August 11, 2016, JSC conducted the judicial sale of the Bozeks' home. The record of who, precisely, initially purchased the home at the sale is unclear (the entire record of that case is not before us); it appears that BoA purchased it but shortly thereafter assigned the deed to Diplomat Property Manager, LLC (Diplomat). In any event, it is undisputed that the judicial sales deed names Diplomat as the property owner.

¶ 15    The following month, BoA filed a "Motion for Order Approving Report of Sale and Distribution, Confirming Sale and Order of Possession, and for a Personal Deficiency Judgment." In October 2016, the Bozeks filed a motion challenging the circuit court's subject matter jurisdiction.

¶ 16    On November 15, 2016, Judge Loftus entered an order (1) approving the report of sale, (2) granting BoA possession of the property, and (3) awarding BoA a deficiency judgment for $357,053.66 against the Bozeks. In a separate order entered the same day, Judge Loftus denied the Bozeks' jurisdictional challenge, stating, "[the] Court has made a finding that it does have subject matter jurisdiction and Defendants [*sic*] challenge is denied."

¶ 17    On December 15, 2016, the Bozeks filed a "Petition to Vacate Order Granting Summary Judgment and Order Confirming Sale," which again asserted that the circuit court lacked jurisdiction because the federal court had not yet remanded the case to the circuit court. Judge Loftus construed the petition as a motion to reconsider and, on January 13, 2017, entered a written order denying the petition. With respect to the Bozeks' claim that the court lacked subject matter jurisdiction, Judge Loftus surmised that the federal court's August 25, 2016, order "dismissed the case *without* perfecting the removal" and, as a result, "the case was never removed." (Emphasis in original.) From that premise, Judge Loftus concluded that "no remand was necessary."

¶ 18    In February 2017, the Bozeks filed a notice of appeal. That appeal was docketed in this court as case No. 1-17-0386.

¶ 19    In March 2017, the McCalla firm posted a notice on the door of the Bozeks' home, stating that PNC Bank had purchased the home on August 11, 2016, and that the sale had been "confirmed by the court" on November 15, 2016. (Confusing, yes—it is unclear why PNC Bank was named as the purchaser—but it will ultimately make no difference here.)

¶ 20    In June 2017, an action for forcible entry and detainer regarding the Bozeks' home was filed in BoA's name against "unknown occupants." That case was docketed in the circuit court as case No. 17-M1-709851 and was assigned to Judge Anthony C. Swanagan.

¶ 21    Bringing us to yet another oddity, which ultimately will not change our resolution but should be noted: Even though the eviction suit was filed in BoA's name, BoA did not have any

legal interest in the foreclosed property. As discussed above, Diplomat ultimately held the deed after the judicial sale. BoA was, in other words, erroneously named as the party-plaintiff. (An officer with BoA would later swear in an affidavit that BoA knew nothing of the eviction lawsuit, did not authorize it, had no interest in the property, and had no corporate relationship with Diplomat. Presumably, there is *some* explanation for how this happened—including that the McCalla firm was counsel of record in both cases, and presumably something fell through the cracks—but the record does not definitively explain this.)

¶ 22      On October 10, 2017, the Bozeks filed a motion to stay enforcement of possession. That motion again argued that the circuit court lacked jurisdiction. On October 18, 2017, Judge Swanagan struck the motion and, in a separate order, granted BoA an order of possession.

¶ 23      In February 2018, BoA filed a motion for extension of time to enforce the order of possession. In response, the Bozeks filed a motion for leave to intervene as a matter of right and a motion to dismiss, which again argued that the court should deny BoA's motion for extension of time because the court lacked jurisdiction. On March 23, 2018, Judge Swanagan denied both motions.

¶ 24      On April 23, 2018, the Bozeks filed a motion to vacate the March 23 order as void. On May 7, 2018, Judge Swanagan denied the Bozeks' motion to vacate. In so doing, Judge Swanagan took the additional step of barring the Bozeks from filing "any additional motions or pleadings in this case without prior leave of court." And, Judge Swanagan explained, leave to file would not be granted "unless the Bozeks provide an Appellate Court or Federal Court order affecting this case or the underlying Chancery foreclosure case."

¶ 25      On Friday, May 18, 2018, we issued our decision in *Bozek I*. There, we determined that the circuit court lost jurisdiction over the foreclosure case when the Bozeks filed their July 31, 2015, notice of removal in federal court. *Bozek I*, 2018 IL App (1st) 170386-U, ¶ 16. Though the federal court had declined to accept the case—it had dismissed it without prejudice and terminated it—the federal court had not formally remanded the matter to state court, and thus the matter remained in federal court, beyond state-court jurisdiction. *Id.* ¶ 20.

¶ 26      As a result, we held that orders entered by Judge Loftus in the foreclosure case on October 28, 2015, and November 15, 2016, were void. *Id.* We thus vacated those orders and remanded for further proceedings. *Id.* ¶ 23. According to the complaint the Bozeks filed in this case, they hand-delivered a copy of our decision in *Bozek I* to the Cook County Sheriff's Office on the same day it was issued.

¶ 27      On Monday, May 21, 2018—the next business day after *Bozek I* was filed—deputies from the Cook County Sheriff's Office arrived at the Bozeks' home. At around 9:55 a.m., the deputies began to evict the Bozeks pursuant to the order of possession granted by Judge Swanagan. In light of the legal issues the Bozeks raised, the eviction was called off, and by 11:11 a.m., the Bozeks were allowed to return to their home.

¶ 28      On May 28, 2018, the Bozeks filed a motion to dismiss the forcible entry and detainer case that was pending before Judge Swanagan.

¶ 29      On June 11, 2018, the federal court entered an order formally remanding the case to the circuit court. In that order, the federal court explained that it never took jurisdiction over the matter and thus saw no need for a formal remand.

¶ 30      On September 12, 2018, the Bozeks filed this lawsuit. The Bozeks sued BoA, PNC Bank (whom the Bozeks later dismissed), the McCalla firm, JSC, Judge Loftus, Judge Swanagan,

Sheriff Dart, and 20 John Does. Against each defendant, the Bozeks asserted the following claims: (1) wrongful foreclosure, (2) injunctive relief, (3) wrongful eviction and intentional infliction of emotional distress, (4) fraud and deceit, (5) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2018)), (6) false imprisonment, (7) a violation of their civil rights under 42 U.S.C. § 1983, and (8) equitable recission and reformation.

¶ 31    The court ultimately dismissed all defendants and the complaint in its entirety. Relevant here, the court dismissed the claims against Judge Swanagan under the doctrine of absolute judicial immunity. The court dismissed the claims against BoA, finding that the complaint failed to state a claim on any ground.

¶ 32                                                ANALYSIS

¶ 33    The circuit court dismissed the Bozeks' claims against Judge Loftus, Judge Swanagan, Sheriff Dart, and JSC pursuant to section 2-619 of the Code of Civil Procedure, and it dismissed the Bozeks' claims against BoA and the McCalla firm under section 2-615. See 735 ILCS 5/2-615, 2-619 (West 2016). A section 2-615 motion challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We construe the complaint's allegations in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in favor of the plaintiff. *Id.* Dismissal is appropriate only if it is "clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20.

¶ 34    A section 2-619 motion, on the other hand, admits the legal sufficiency of the complaint but raises affirmative matter that avoids the legal effect, or otherwise defeats, the plaintiff's claims. *Id.* ¶ 21. Our review of a dismissal under either section is *de novo*. *Id.*

¶ 35                                                    I

¶ 36    Though the Bozeks appealed all dismissal orders here, they have made it clear throughout their appellate briefs that their appeal is focused only on the dismissal of Judge Swanagan and BoA from this lawsuit. They write at the outset that, though they sued "multiple parties," "only Bank of America, N.A. and [Judge] Anthony Swanagan are relevant to this appeal." By affirmatively disavowing any attempt to overturn the dismissal of any other defendants, they have abandoned any such claims. See *AMCO Insurance Co. v. Erie Insurance Exchange*, 2016 IL App (1st) 142660, ¶ 18 n.1; *Berggren v. Hill*, 401 Ill. App. 3d 475, 479 (2010).

¶ 37    Abandonment aside, the Bozeks have raised no arguments as to why these other defendants' dismissals were inappropriate. They repeatedly refer only to BoA or Judge Swanagan as defendants who should be liable under the various theories they allege. Indeed, two of the defendants have filed motions to dismiss for that reason or, in the alternative, for summary affirmance based on forfeiture. We took those motions with the case.

¶ 38    We will not dismiss the appeal as to those other defendants, but we agree that the Bozeks have forfeited any challenge to the dismissal of these other defendants—that is, all defendants aside from BoA and Judge Swanagan. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not raised in brief are forfeited); *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) (same); *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45 (forfeiture applies to

*pro se* litigants as well). We grant the motions for summary affirmance, but we extend our holding beyond the two defendants who filed those motions. We summarily affirm the judgments of dismissal as to all defendants to this appeal aside from BoA and Judge Swanagan.

¶ 39 While we are in this realm, we also note, as did BoA, that many of the claims the Bozeks raised in their complaint have not been litigated on appeal. That is, the Bozeks have not challenged the dismissal of those claims. They include claims for injunctive relief (count II), which in fairness the Bozeks abandoned even at the trial level; intentional infliction of emotional distress (part of count III); fraud (count IV); violation of civil rights under 42 U.S.C. § 1983, at least insofar it would concern a private actor like BoA (count VII); and equitable rescission of deed (count VIII). Absent any argument on those points in the Bozeks' opening brief, those arguments are forfeited, and we will not discuss them below.

¶ 40                                         II

¶ 41 Before we go any further, it is important (and economical) to discuss one time, on the front end, the issue that almost singularly consumes this entire lawsuit. The foreclosure case ended erroneously due to the court's loss of jurisdiction, per the notice of removal to federal court filed by the Bozeks. That led to an invalid judgment of foreclosure and sale of the property. That also later led, say the Bozeks, to an eviction proceeding that was fatally flawed, based as it was on improper foreclosure and judicial-sale orders that transferred the property away from the Bozeks. It is important to unpack what did and did not happen and why.

¶ 42 The Bozeks sought to remove the foreclosure action (before Judge Loftus) to federal court nearly *five years* after that case began. Perhaps not coincidentally, they filed their notice of removal after briefing was completed on BoA's motion for summary judgment that prayed for a judgment of foreclosure and sale. The foreclosure action, in other words, was nearing an end—at least if Judge Loftus granted BoA's motion, as she ultimately did.

¶ 43 There can be no dispute that this attempted removal to federal court was untimely, as notices of removal must be filed within 30 days after the defendant receives (or is served with) the initial pleading entitling the defendant to removal. 28 U.S.C. § 1446(b) (2018); *Northern Illinois Gas Co. v. Airco Industrial Gases*, 676 F.2d 270, 273 (7th Cir. 1982); *Cook v. Travelers Cos.*, 904 F. Supp. 841, 842 (N.D. Ill. 1995).

¶ 44 And that was quite clearly the impression of Judge Blakey in summarily disposing of the removal petition. The federal judge noted the obvious lack of timeliness, citing section 1446, and accordingly "dismissed without prejudice" the federal litigation and "terminated" the case from his federal docket. But of course, he did not explicitly, formally remand the matter to state court.

¶ 45 Judge Loftus was of the opinion (backed by BoA) that, because the notice of removal was found by Judge Blakey to be improper on its face and dismissed, federal jurisdiction had never attached, and thus the circuit court had jurisdiction once again (if it ever lost it in the first place). Judge Loftus thus proceeded, two days after Judge Blakey's rejection of the removal petition, to enter summary judgment and order a foreclosure on and sale of the Bozeks' property. And from there, of course, the property was later sold, ultimately ending up in the hands of Diplomat.

¶ 46 Then came the eviction action, Judge Swanagan presiding. The judge was presented with a valid order of foreclosure and confirmation of sale. True, the Bozeks complained to Judge

Swanagan that the foreclosure court (Judge Loftus) lacked jurisdiction per the removal statute, but Judge Swanagan rejected those arguments. And Judge Swanagan was correct to do so.

¶ 47    The eviction case was separate and apart from the foreclosure case. Eviction matters—that is, forcible entry and detainer actions—are "limited and distinct proceeding[s]" concerned with the question of "who is entitled to immediate possession of real property" and nothing more. *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14. As such, attacks on the earlier foreclosure judgment were "not germane to the issue of possession but, rather, constituted a collateral attack on the mortgage foreclosure judgment." *Id.* ¶ 16; see also *Lady v. Montgomery Ward & Co.*, 80 Ill. App. 3d 69, 72 (1980) (tenant who was named defendant in mortgage foreclosure proceeding was collaterally estopped from contesting foreclosure judgment in later forcible entry and detainer action; "However incorrect that [foreclosure judgment] may have been, the defendant's remedy was to attack it directly by appealing from the decree, instead of attacking that decision collaterally in this forcible entry and detainer action.").

¶ 48    In other words, both the Bozeks and Judge Swanagan were right. The Bozeks were ultimately validated in their claim that the foreclosure court lacked jurisdiction to enter the orders of summary judgment and foreclosure and sale. See *Bozek I*, 2018 IL App (1st) 170386-U, ¶¶ 16, 20. But Judge Swanagan was also correct not to rule on those issues, as they belonged to another case that he could not collaterally impact.

¶ 49    The *Bozek I* decision was handed down on Friday, May 18, 2018. By that point in the eviction case, the dye was already cast. Judge Swanagan had already entered judgment of possession in favor of the plaintiff and against the Bozeks, and the eviction order was executed the following Monday by the Cook County Sheriff—or least partially executed before being called off a little over an hour after it began.

¶ 50    When Judge Blakey, after our decision in *Bozek I*, formally remanded the matter to state court, he explained that he "previously dismissed this case because the face of the complaint showed that the requirements for removal were not satisfied. This Court never took jurisdiction of the matter, and therefore did not include in the dismissal order language remanding the case back to the Circuit Court."

¶ 51    At the end of the day, it is not our place to say who was right. It is only to note that two able judges—Judge Loftus and Judge Blakey—were of the opinion that a formal remand was not necessary. A unanimous panel of this court disagreed, but it is fair to say that this was a somewhat unique set of circumstances. For one, the attempted removal was obviously untimely. For another, a federal judge said so, in no uncertain terms, and made it entirely clear that the case would not spend one more minute on his docket—clearly indicating that, at least in his opinion, nothing no more needed to be said (or ordered). So while this court's decision in *Bozek I* is the final say on the matter, and we have no reason to disagree with it, we would likewise say that this was a rather complex set of circumstances, and legal positions on each side of the fence were at least reasonable.

¶ 52    With these observations in mind, we turn to the merits of the complaint insofar as they relate to preserved claims against Judge Swanagan and BoA.

¶ 53                                                    III

¶ 54        We first consider whether the circuit court correctly dismissed the claims against Judge Swanagan. The Bozeks claim, in essence, that Judge Swanagan should have known that the foreclosure court (Judge Loftus) lacked jurisdiction over that case, he thus should have recognized a fatal defect in the eviction case stemming from that foreclosure, and he should have alerted Sheriff Dart to that defect.

¶ 55        We have just explained that Judge Swanagan was powerless to stay, vacate, or otherwise impact the orders entered by Judge Loftus in the foreclosure action (particularly once they were on appeal to this court). But that leaves the fact, say the Bozeks, that Judge Swanagan could have stayed his eviction order pending the outcome of *Bozek I*, and once he learned of *Bozek I*, he could have alerted Sheriff Dart not to execute his eviction order. The circuit court dismissed the claims against Judge Swanagan based on absolute judicial immunity.

¶ 56        The doctrine of judicial immunity is as old as the Republic itself. See *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ***."); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871) (noting that doctrine of judicial immunity "has been the settled doctrine of the English courts for many centuries," "has never been denied" in American courts, and has " 'a deep root in the common law' " (quoting *Yates v. Lansing*, 5 Johns. 282, 291 (N.Y. Sup. Ct. 1810)).

¶ 57        Absolute judicial immunity protects a judge from suit for his "judicial acts," even if the judge is alleged to have acted "in excess" of his "jurisdiction" and even if the judge is alleged to have acted " 'maliciously or corruptly.' " *Moncelle v. McDade*, 2017 IL App (3d) 160579, ¶ 18 (quoting *Bradley*, 80 U.S. (13 Wall.) at 351). The doctrine exists " 'not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' " *Pierson*, 386 U.S. at 554 (quoting *Scott v. Stansfield* [1867] L.R. 3 Ex. 220, 223 (Eng.)). As the United States Supreme Court reasoned:

> "It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." *Id.*

¶ 58        Judicial immunity is immunity from *suit*, not just from liability in damages. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (*per curiam*). Thus, as stated above, a plaintiff cannot overcome an assertion of judicial immunity through "allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.*

¶ 59        There are only two recognized exceptions to judicial immunity. The first is that " 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.' " *Moncelle*, 2017 IL App (3d) 160579, ¶ 19 (quoting *Mireles*, 502 U.S. at 11).

¶ 60        The Bozeks claim that this exception applies here. They say that, once this court held in *Bozek I* that the foreclosure court (Judge Loftus) lost jurisdiction based on the removal to

federal court, Judge Swanagan should have immediately notified Sheriff Dart not to proceed with the eviction. And that obligation, which would consist of a phone call, a fax, an e-mail, or something of that nature, would not be an inherently judicial act; it would be more along the lines of an "administrative" task not protected by judicial immunity.

¶ 61 As Judge Swanagan notes, however, the Bozeks did not raise this argument in the trial court. Any claim that the judge had an affirmative duty to notify the sheriff of the *Bozek I* decision, but failed to do so, is thus forfeited. *Pennymac Corp. v. Jenkins*, 2018 IL App (1st) 171191, ¶ 21 (arguments raised for first time on appeal are forfeited).

¶ 62 In any event, we would reject this new argument. It is easy enough for the Bozeks to say that the act of dialing a phone or sending an e-mail is more of an "administrative" task. In a vacuum, that may be true. But in this context, there would be nothing "administrative" about this particular communication. At the time *Bozek I* was handed down, the sheriff was armed with a lawful court order directing him to evict the Bozeks. That order would remain binding on the sheriff unless and until it was superseded by *another judicial order* to stay or vacate that order from a court with proper authority to issue the order (for example, the appellate court or Judge Swanagan himself).

¶ 63 So instead of generically alleging that Judge Swanagan should have "communicated" with the sheriff, the only way that any such "communication" would have any legal consequence whatsoever would be if Judge Swanagan issued the sheriff an order staying or vacating the previous order of possession. And nobody could possibly claim that the issuance of a judicial order falls outside the judicial sphere; it is part and parcel of everyday judicial duties.

¶ 64 There are, no doubt, cases where judicial immunity was rejected because the actions taken did not fall into the judicial sphere and were instead considered "administrative." See, *e.g.*, *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1133 (Ala. 2000) (magistrate not protected by absolute judicial immunity for failing to recall warrant because magistrate, under Alabama law, was not "a judge acting under our unified judicial system" but, rather, was "a hybrid creature, combining both clerical attributes and limited judicial attributes," and magistrate's failure to recall warrant was part of its clerical administrative duties, not judicial duties).

¶ 65 But that is just another way of saying that the defendant in that case was not acting within the judicial sphere. And that is very different than saying, as the Bozeks do here, that something a judge does *within* the judicial sphere—issuing a new judicial order—that happens to *include* a relatively administrative component—delivering that order via e-mail, fax, or perhaps orally by phone—somehow places the entire act outside the judicial sphere.

¶ 66 Consider the Seventh Circuit's decision in *Dawson v. Newman*, 419 F.3d 656, 658 (7th Cir. 2005), where the trial judge failed to transmit a release order to the Indiana Department of Corrections, the failure of which led to the plaintiff remaining in prison for 14 months after he should have been released. The plaintiff there claimed that the transmission of a release order was a mere "administrative" task, but the Seventh Circuit held that, to the extent it was a duty of the court as prescribed by Indiana statute, it was, by definition, a judicial task within the judicial sphere, thus protected by judicial immunity. *Id.* at 661; see also *id.* at 662 ("to the extent that [the Indiana statute] imposes a duty on the judge at all, that duty implicates the judge's role *as judge* rather than as an administrative or clerical officer" (emphasis in original)).

¶ 67　　　Another case cited by Judge Swanagan, *Lowe v. Letsinger*, 772 F.2d 308 (7th Cir. 1985), puts an even finer point on the matter. The district judge there, Judge Letsinger, failed to send notice of an order granting postconviction relief for three weeks, leading to a prisoner's extended time in prison. The plaintiff alleged that "the mere mailing of the notice is a clerk's chore," but the Seventh Circuit reasoned that:

> "So far as Judge Letsinger is concerned it makes no difference.
>
> 　　Assuming the judge did undertake to control the disposition of his own order he was still acting in his judicial role, exercising his discretion. His judicial involvement had not yet ended. Interference with giving notice cannot be classified as merely administrative so as to avoid the immunity defense; it is too much an integral part of the total judicial process, in contrast, for example, to the mere typing and posting of the notice by a clerk which is a ministerial task. We hold then that like a judge's decision as to when an order should issue, his decision as to whether and how notice should be given is also immunized." *Id.* at 313.

¶ 68　　The Bozeks cannot have it both ways. They reach squarely into the judicial sphere in claiming that Judge Swanagan should have realized (or did realize) that he should reconsider his eviction order, based on questions of possession spawned by our decision in *Bozek I*. But then when they discuss how the judge should have reacted to that revelation, rather than recognize that any response via a new judicial order to vacate or stay the eviction order would *likewise* be a judicial act, they strip the action down to the basic task of an e-mail or phone call, deem it "administrative," and argue that judicial immunity is inapplicable.

¶ 69　　Judicial immunity would be severely curtailed if a litigant could separate the substance of what a judge does (issuing an order) from the mechanics of how that substantive act is communicated to the parties (electronic communication, phone, etc.). See *id.* ("To label some part of the judicial process as administrative or ministerial and thereby encroach on the judicial defense of absolute immunity, as disturbing as the judicial conduct may be, cannot be permitted. The functioning of the system is more important than some particular and rare judicial misdeed which can be dealt with in other ways, by appellate processes, the ballot, or, in the federal system, by impeachment or other sanctions ***.").

¶ 70　　We thus reject the claim that Judge Swanagan's failure to communicate with the sheriff about the invalid eviction order—which really means his failure to issue a new order vacating or staying the previous one—falls under some "administrative" exception to judicial immunity.

¶ 71　　Beyond that, we are left with the argument the Bozeks *did* raise below, and repeat before us, regarding the first exception to judicial immunity. They claim more generally that Judge Swanagan knew (or should have known) that the foreclosure and sales orders were void for want of jurisdiction, and thus the question of possession before him should have been resolved in the Bozeks' favor—or at least he should not have entered an order of possession and eviction against the Bozeks until *Bozek I* was handed down.

¶ 72　　As already noted, even if it were Judge Swanagan's responsibility to determine the validity of another court's judgments (it is not), any such determination would unquestionably be a discretionary, judicial decision. The Bozeks' claim here is nothing more than a garden-variety claim that the judge erred in his role as a judge. Again, judicial immunity is not concerned with the motives or knowledge of the judge. See, *e.g.*, *McCullough v. Finley*, 907 F.3d 1324, 1331 (11th Cir. 2018) ("[E]ven if the judges were motivated to generate municipal revenue, their acts 'do[ ] not become less judicial by virtue of an allegation of malice or corruption of

- 11 -

motive.' " (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). The question, in simple terms, is whether the judge was performing "a function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). That is unquestionably the case here. So the first exception to judicial immunity does not apply.

¶ 73    Under the second exception to judicial immunity, " 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *Moncelle*, 2017 IL App (3d) 160579, ¶ 19 (quoting *Mireles*, 502 U.S. at 12). The Bozeks say that this exception applies because Judge Swanagan never truly had jurisdiction over the eviction case, infected as it was by the void foreclosure and sale orders from the foreclosure court.

¶ 74    We reject this argument for two reasons. First, we do not accept the premise that Judge Swanagan lacked jurisdiction over the forcible entry and detainer action at *any* time. The court in the *foreclosure* case lost jurisdiction, to be sure, when that action was removed to federal court. *Id.* Which means that the orders Judge Loftus subsequently ordered were void. *Id.* The problem with the forcible entry and detainer case was that it was based on the void foreclosure orders—a problem, to be sure, but not a *jurisdictional* problem. Judge Swanagan always had jurisdiction over the forcible entry and detainer case.

¶ 75    We would reject the application of the second exception, in any event, because briefly losing jurisdiction over a case, due to a removal to federal court, is not what is meant by a court acting "in the complete absence of jurisdiction." *Mireles*, 502 U.S. at 12. That is, in this context, "the term 'jurisdiction' refers not to a judge's authority or power to act, but to the subject-matter jurisdiction of the court upon which the judge sits." *Moncelle*, 2017 IL App (3d) 160579, ¶ 19; see *Fisher*, 80 U.S. (13 Wall.) at 352. If, for example, a judge sentenced a felon to a sentence greater than the law allowed, that judge would be acting in *excess* of jurisdiction, not in the complete absence of jurisdiction, and would thus be protected by judicial immunity. See *Fisher*, 80 U.S. (13 Wall.) at 352.

¶ 76    So the question is not whether a judge exceeded his or her jurisdiction in a specific case at a specific time. Rather, the proper inquiry, viewed broadly, is whether the case over which the judge was presiding belonged to a class of cases that the court was generally empowered to adjudicate. That is why the Ohio Supreme Court, under facts remarkably similar to ours, held that a trial court's issuing of orders, after losing jurisdiction due to a removal to federal court, were in *excess* of its jurisdiction, not in the complete absence of jurisdiction, and thus the trial judge was entitled to judicial immunity. *Borkowski v. Abood*, 2008-Ohio-857, 884 N.E.2d 7, ¶ 5.

¶ 77    And that is clearly the case here. Judge Swanagan had and never lost subject-matter jurisdiction over the eviction case. The circuit court's subject-matter jurisdiction is conferred by the Illinois Constitution. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). With two exceptions not relevant here, the constitution provides the circuit court with "original jurisdiction" over "all justiciable matters." Ill. Const. 1970, art. VI, § 9. Without question, an eviction lawsuit is a justiciable matter. See *Goodwin v. Matthews*, 2018 IL App (1st) 172141, ¶ 20 (actions under Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2016)) are justiciable).

¶ 78    We thus reject the application of either exception to judicial immunity. Judge Swanagan was acting well within the judicial sphere in all aspects of that case relevant here and never, at any time, acted in the complete absence of jurisdiction. The circuit court properly dismissed

the claims against Judge Swanagan under judicial immunity.

¶ 79                                                    IV

¶ 80    We next consider the Bozeks' argument that the circuit court erred by dismissing their claims against BoA under section 2-615 for failure to state a claim.

¶ 81                                                    A

¶ 82    We first address whether the circuit court correctly dismissed count I of the complaint, which purported to state a claim for "wrongful foreclosure." The Bozeks' wrongful foreclosure claim was, broadly speaking, predicated on the allegation that the parties proceeded with the foreclosure case despite knowing that the circuit court had lost—and never regained— jurisdiction due to the Bozeks' notice of removal. The Bozeks freely concede that Illinois law does not recognize a cause of action for "wrongful foreclosure." See, *e.g.*, *Acevedo v. CitiMortgage, Inc.*, No. 11-C-4877, 2013 WL 1283807, at \*6 (N.D. Ill. Mar. 26, 2013) (dismissing purported claim for wrongful foreclosure based on plaintiff's failure to "identif[y] authority recognizing wrongful foreclosure as a cause of action").

¶ 83    The Bozeks say, however, that we should focus on the substance, not the title, of their claims and consider their "wrongful foreclosure" claim as one for abuse of process or slander of title. See *General Casualty Co. of Wisconsin v. Burke Engineering Corp.*, 2020 IL App (1st) 191648, ¶ 39 (in assessing claim, court should look "at the actual factual allegations, not the label"). They made that same argument to the trial court, so it is properly preserved.

¶ 84    "Abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the legal process itself." *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 60. To state a claim for abuse of process, the plaintiff must plead "(1) an improper motive and (2) some act in the use of legal process that is improper in the regular prosecution of proceedings." *Id.*

¶ 85    To establish that the defendant had an improper motive, "the plaintiff must plead facts showing that the defendant instituted proceedings against the plaintiff for a purpose 'such as extortion, intimidation, or embarrassment.' " *Id.* (quoting *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2004)). And "[t]he second element requires proof that 'the process was used to accomplish some result that is beyond the purview of the process.' " *Id.* (quoting *Kumar*, 354 Ill. App. 3d at 165).

¶ 86    The complaint here alleged neither of those elements. There is no allegation that BoA filed this foreclosure action for the purpose of intimidation or harassment, as opposed to exercising its contractual right to foreclose on the property for nonpayment. And the result sought— foreclosure—was not beyond the purview of the process. The mere fact that a quirky procedural irregularity, resulting in a jurisdictional defect, escaped the notice of a federal judge, BoA, and the trial court does not somehow give rise to a claim of abuse of process without more.

¶ 87    For much the same reason, count I could not be read as a cognizable claim for slander of title. A cause of action for slander of title requires proof that (1) the defendant made a false and malicious publication, (2) the publication disparaged the plaintiff's title to property, and (3) the publication caused damages to the plaintiff. *Chicago Title & Trust Co. v. Levine*, 333 Ill. App. 3d 420, 424 (2002). While the complaint liberally sprinkles around the operative words, it provides no coherent factual allegation that anything that BoA did was, in fact, false

or malicious. Indeed, BoA proceeded throughout the foreclosure case and on appeal in *Bozek I* with good-faith arguments why the foreclosure court never lost jurisdiction over the cause, notwithstanding the notice of removal—arguments with which Judge Loftus and Judge Blakey agreed.

¶ 88     The "wrongful foreclosure" claim was properly dismissed, even if restyled as a claim for abuse of process or slander of title.

¶ 89                                                                 B

¶ 90     The Bozeks appeal the dismissal of count III to the extent it alleged that BoA was liable for "wrongful eviction." Unfortunately, before both the circuit court and this court, the Bozeks have never adequately explained this cause of action.

¶ 91     We say that because an action for an improper eviction may be brought under the Forcible Entry and Detainer Act (Act). See 735 ILCS 5/9-101 *et seq.* (West 2010). But as noted earlier, the Act provides a limited statutory remedy aimed at determining the question of possession. *Watson*, 2012 IL App (3d) 110930, ¶ 14. That is, the Act provides a remedy for re-possession but *not* one for tort damages. *Campana Redevelopment, LLC v. Ashland Group, LLC*, 2013 IL App (2d) 120988, ¶¶ 12-13; *Yale Tavern, Inc. v. Cosmopolitan National Bank*, 259 Ill. App. 3d 965, 971 (1994) ("Matters not germane to the issue of possession may not be litigated in a forcible entry and detainer action."); *Cherry v. Five Brothers Mortgage Co. Services & Securing, Inc.*, No. 18-C-03326, 2019 WL 4014066, at *4 (N.D. Ill. Aug. 25, 2019) (the Act "does not create a cause of action for tort damages at all—only restoration of possession"); *White v. City of Markham*, No. 99-C-3162, 1999 WL 1044835, at *4 n.8 (N.D. Ill. Nov. 16, 1999) (the Act "merely allows for the restoration of possession, not tort damages").

¶ 92     That is a problem for the Bozeks because count III of their complaint does not seek restoration of possession. (Indeed, as far as we can tell, at least at the time the complaint was filed, the Bozeks had not lost possession of their home.) Instead, for the one-plus hour they were wrongfully evicted from their home before the sheriff aborted the eviction, the Bozeks seek damages to the tune of $5 million in compensatory damages and $10 million in punitive damages. So to the extent they were pleading a claim under the Act, their claim was properly dismissed.

¶ 93     Maybe the Bozeks are seeking a claim under the common law, if such a cause of action exists. The Bozeks have not told us whether they are doing so, nor have they detailed the elements of that cause of action. Before this court, they cite two decisions from over a century ago. But, the decision in *Leiter v. Day*, 35 Ill. App. 248, 249 (1889), was an "action of trespass." They cite *LaBelle v. Grand Central Market Co.*, 172 Ill. App. 582, 583 (1912), a case that did, indeed, reference an award in favor of a tenant for "damages sustained by an alleged wrongful eviction." But it is by no means clear that the court was referring to a precise cause of action in that description—and if so, a tort versus a statutory claim. In what little we can glean from that decision, it appeared to be a more garden-variety contract claim, a dispute over a lease, including a claim by the landlord that the lease agreement was barred by the statute of frauds. *Id.* at 586.

¶ 94     Before the circuit court and to a lesser extent here, the Bozeks rely on the supreme court decision in *Harper v. Sallee*, 376 Ill. 540, 548 (1941), for the proposition that "[a]ny entry made without legal authority to do so constitutes an actionable forcible entry." While it is not altogether clear whether *Harper* concerned an action under the Act or a common-law tort

- 14 -

claim, the court's use of the specific phrase "forcible entry" (and nary a mention of "wrongful eviction") would strongly suggest it was discussing an Act claim. We are not alone in that interpretation of *Harper*. See *Perry v. Evanston Young Men's Christian Ass'n*, 92 Ill. App. 3d 820, 824 (1981) (discussing *Harper* in analysis of amount of force necessary to constitute "forcible entry within the meaning of the forcible entry and detainer statute").

¶ 95 Our own research yields the nonbinding federal decision of *Miller v. Washington*, No. 11-C-1520, 2013 WL 1340590, at *9 (N.D. Ill. Mar. 30, 2013), where the court wrote that "a wrongful eviction is an actionable common law tort under Illinois law." For that proposition, the court cited three cases that do not convince us of that proposition at all.

¶ 96 One of them was *Leiter*, 35 Ill. App. at 249, which, as we noted above, explicitly referred to the case as an "action of trespass." The court in *Cochrane v. Tuttle*, 75 Ill. 361, 365 (1874), used that same phrase in describing the action. That case, in any event, considered an alleged landlord-tenant relationship between the plaintiff and defendant; the decision largely centered around the sufficiency of proof and whether such a relationship actually existed between the parties. The phrase "wrongful eviction" was never mentioned, much less as a cause of action with a discussion of its elements. Finally, the federal court cited *Burnex Oil Co. v. Floyd*, 4 Ill. App. 3d 627, 629 (1972), which does mention a count seeking damages for "wrongful eviction from the premises." The court never elaborated on that reference, devoting most of the opinion to procedural and jurisdictional issues, as well as a discussion of the conversion count. Again, it is unclear whether that was an Act claim or a common-law claim.

¶ 97 The long and short is this: If the Bozeks are pursuing an Act claim for "wrongful eviction," that claim was properly dismissed because the complaint did not seek restoration of possession but rather compensatory and punitive damages. If they are attempting to state a claim for some common-law tort, they are obligated, at a bare minimum—even as *pro se* plaintiffs—to tell us that, explain what those elements are, and detail how count III alleged them. And just as importantly, to do all those things in the *circuit court* first, to give that court the first opportunity to analyze their claims.

¶ 98 They have done neither. In their response to the motion to dismiss below, the Bozeks never attempted to articulate a common-law claim of "wrongful eviction" or explain how their complaint alleged its elements. The failure to raise that argument in the trial court is forfeiture. *Vantage Hospital Group, Inc. v. Q Ill Development, LLC*, 2016 IL App (4th) 160271, ¶ 49 ("It has long been the law of the State of Illinois that a party who fails to make an argument in the trial court forfeits the opportunity to do so on appeal."). And that particular breed of forfeiture is critical to honor to "[e]nsur[e] both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14.

¶ 99 Any claim of a common-law tort is likewise forfeited before this court for failing to cite authority or give any detail whatsoever as to the existence or elements of such a cause of action in the opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not raised in brief are forfeited); *Vancura*, 238 Ill. 2d at 369; *Gillard*, 2019 IL App (1st) 182348, ¶ 45 (forfeiture applies to *pro se* litigants). So we will consider no further whether a common-law action for "wrongful eviction" is a recognized tort in Illinois.

¶ 100 We have gone to great lengths to excuse deficiencies in the Bozeks' appellate brief, most notably their failure to support many of their claims with case law. We have done so in large part owing to their status as *pro se* litigants. But there must be a limit to the independent

research we will conduct in search of a cause of action to salvage a complaint, lest we become that litigant's advocate and not an impartial tribunal. See *CE Design, Ltd. v. Speedway Crane, LLC*, 2015 IL App (1st) 132572, ¶ 18 (appellate court may not act as advocate or seek error in record).

¶ 101   For all these reasons, we uphold the dismissal of count III.

¶ 102                                         C

¶ 103   We next consider whether the Bozeks properly pleaded a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. See 815 ILCS 505/2 (West 2016). The complaint must allege (1) a deceptive act or practice by defendant, (2) defendant's intent that plaintiff rely on the deception (though plaintiff need not actually rely on it), (3) that the deception occurred in the course of conduct involving trade and commerce, and (4) that the fraudulent conduct proximately caused plaintiff's injury. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). A claim of a deceptive act or unfair practice "must be pled with the same particularity and specificity as that required under common law fraud." *Id.*

¶ 104   The claim here is predicated on the allegation that BoA made misleading statements about the circuit court's jurisdiction following the Bozeks' unsuccessful attempt to remove the matter to federal court. We immediately identify two fatal problems with this claim.

¶ 105   The first and most glaring is that BoA's argument to the court, that Judge Blakey's "dismissal" and "termination" of the case in federal court was enough to revest the circuit court with jurisdiction, was a legal position taken in court with respect to a federal statute, not any kind of actionable misrepresentation of fact. See, *e.g.*, *Stern v. Norwest Mortgage, Inc.*, 284 Ill. App. 3d 506, 513 (1996), *aff'd*, 179 Ill. 2d 160 (1997) (disagreement over legal interpretation of Mortgage Escrow Account Act (765 ILCS 910/1 *et seq.* (West 1992)) was not actionable as consumer fraud; "there must be a claim seated in deceptive acts rather than a reasonable difference of opinion as to the meaning of an act of the Illinois General Assembly").

¶ 106   We already indicated that, whatever our decision in *Bozek I*, it was not unreasonable for BoA to take that legal position; indeed, Judge Blakey certainly seemed to think that he had washed his hands of the case with that order rejecting the matter, dismissing it without prejudice, and terminating it from his docket. And of course, Judge Loftus agreed, as well.

¶ 107   And reasonable or not, we cannot imagine how BoA's assertion of a legal opinion to a court of law could possibly qualify as actionable fraud. See also *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 34 (attorney's statements to client about whether property was marital or nonmarital "was a legal opinion, not a fact, and thus was not actionable as fraud"); *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of South Metro-East*, 378 Ill. App. 3d 713, 723 (2008) ("Generally, an expression of opinion will not support an action for fraud."). We are not talking here about misrepresenting *facts* to a court—that may well yield a different outcome—but a lawyer expressing a legal position to a judge is not actionable fraud.

¶ 108   The second fatal defect is that plaintiffs do not and could not allege that the misrepresentation proximately caused their injuries. *Connick*, 174 Ill. 2d at 501. BoA was merely stating its view of the federal removal statute and the effect of Judge Blakey's order on the circuit court's jurisdiction, just as the Bozeks expressed their views on the subject. BoA's statement of opinion, in an adversarial proceeding, was for Judge Loftus to accept or reject. As it happened, she accepted it. But it was ultimately the court's, and only the court's, decision to

- 16 -

determine its own jurisdiction or lack thereof. It was her decision, and her decision alone, that "caused" the proceedings to continue.

¶ 109 We thus uphold the dismissal of the claim for consumer fraud.

¶ 110                                                     D

¶ 111 Finally, we consider whether count VI properly pleaded a claim against BoA for false imprisonment. False imprisonment is "an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 474 (1990). The complaint must allege that "the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Id.*

¶ 112 The Bozeks' false imprisonment claim is predicated on actions taken during the eviction. Specifically, the Bozeks alleged that during the eviction, the defendants "ordered" them to "move to a location apart from their original location without right, legal reason, or valid order for several hours and were not allowed to move back to a residence location to which they had legal access and right to occupy." But the eviction was carried out by Sheriff Dart pursuant to a lawful court order. BoA's role in the process, at most, is several steps removed from that action.

¶ 113 A more fundamental problem here is that the complaint does not allege any restraint. Being kicked out of one's home, but not otherwise restrained or detained, is not false imprisonment any more than we considered a passenger wrongfully ejected from a taxi to have been falsely imprisoned, "unless one absurdly considers the plaintiff to have been confined to all the world except the defendants' taxi." *Trevino v. Flash Cab Co.*, 272 Ill. App. 3d 1022, 1031 (1995). The complaint fails to state a claim for false imprisonment.

¶ 114                                            CONCLUSION

¶ 115 We affirm the judgment of the circuit court in its entirety.

¶ 116 Affirmed.