NOTICE
Decision filed 05/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240923-U

NO. 5-24-0923

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| DEARL HAWKINS, MICHELLE HAWKINS, and COLETON DOWNES, | ) ) ) | Appeal from the Circuit Court of Marion County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 20-L-7 |
| JASON COFFMAN, KIMBERLY COFFMAN, RICHARD STEVENSON, TODD A. GARDEN, KEVIN CRIPPS, and MARION COUNTY, ILLINOIS, | ) ) ) ) ) | Honorable Chad M. Miller, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Cates and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1 *Held*: We affirm the judgments of the circuit court granting summary judgment on count I, where there was no actual restraint; on counts III and IV, where there was probable cause to believe the offenses were committed; and on count VI, where there was no invasion of privacy because the cameras were not directed at an area of expected privacy.

¶ 2 This interlocutory appeal stems from the circuit court's grant of summary judgment on counts III, IV, and VI of the plaintiffs', Dearl Hawkins, Michelle Hawkins, and Coleton Downes, first amended complaint, and count I of the plaintiffs' second amended complaint. The complaints asserted various claims arising from the alleged harassment of the plaintiffs by the defendants,

1

Jason Coffman, Kimberly Coffman, Richard Stevenson, Todd A. Garden, Kevin Cripps, and Marion County, Illinois. For the following reasons, we affirm the judgments of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      The plaintiffs, Dearl Hawkins and Michelle Hawkins, are a married couple. The plaintiff, Coleton Downes, is Michelle's son and Dearl's stepson. The defendants, Jason Coffman and Kimberly Coffman, are a married couple. The Coffmans and Hawkinses are neighbors and their homes are less than 500 feet apart.

¶ 5      The defendant, Richard Stevenson, is the Sheriff of Marion County, and the defendants, Todd A. Garden and Kevin Cripps, are deputy sheriffs in Marion County. The defendant, Marion County, is a municipality located within the State of Illinois. We will refer collectively to Stevenson, Garden, Cripps, and Marion County as the "Marion defendants," unless the identification of an individual defendant is required.

¶ 6      The plaintiffs filed their initial complaint on January 22, 2020. The complaint stated that on December 17, 1997, Dearl pleaded guilty to criminal sexual abuse in violation of section 12-15(a)(2) of the Criminal Code of 1961 (720 ILCS 5/12-15(a)(2) (West 1996)), a Class A misdemeanor. He had been charged with having sexual intercourse with his girlfriend on October 13, 1997, when he was 20 years old and his girlfriend was under the age of 18 years old. Due to this conviction, Dearl was required to register as a sex offender for 10 years and that requirement expired on January 7, 2008. A copy of the information charging Dearl and a copy of the January 7, 2008, Notice of Expiration of Illinois Sex Offender Registration Requirement were attached as exhibits to the complaint.

¶ 7      On March 10, 2019, Dearl was involved in a head-on collision with a vehicle being driven on the wrong side of the road by Kimberly. After the collision, Jason came to the scene of the

2

collision and began striking Dearl. Dearl filed suit against the Coffmans alleging claims of negligence against Kimberly and assault and battery against Jason. After the vehicle collision and personal injury lawsuit, the complaint alleged that the Coffmans began to repeatedly harass the plaintiffs.

¶ 8    The complaint stated that on May 10, 2019, Dearl and Michelle attended a school banquet because Michelle's daughter was receiving a special honor. The Coffmans advised the school's principal that Dearl was a sex offender who required prior permission before attending an event at a school. Thereafter, the principal filed a complaint against Dearl, who was later charged by information with knowingly and unlawfully being present in a school building as a child sex offender in violation of section 11-9.3(a) of the Criminal Code of 2012 (720 ILCS 5/11-9.3(a) (West 2018)). A copy of the information was attached as an exhibit to the complaint.

¶ 9    According to the complaint, Dearl appeared in court on at least three occasions and had retained an attorney, but then the State moved for an order of *nolle prosequi*, which was granted. The state's attorney had stated that its key witness, Kevin Cripps, was not available to testify at the preliminary hearing. The complaint alleged, however, that Dearl observed Cripps escorting prisoners on the ground floor of the courthouse and, thus, was available to testify if the State had chosen to pursue the charge.

¶ 10    The complaint also stated that Kimberly allegedly obtained a license to operate a daycare center in her home. She then contacted Sheriff Sevenson to request that charges be filed against Dearl, as a convicted sex offender, for residing within 500 feet of a daycare center. On December 6, 2019, Todd A. Garden hand-delivered a letter from Sheriff Stevenson to Dearl, that stated, in part, as follows:

3

"It is the intentions of this office to enforce the law, which may include arrest and/or prosecution, under this statute. However, given these circumstances, we are allowing you thirty (30) days to vacate your residence at [address] within the specified time period. After thirty days from this letter, it is our intentions to enforce the law."

¶ 11 Dearl moved out of his home to his parents' home. The complaint alleged, however, that the Coffmans were not operating a daycare center in their home, nor did they meet the requirements of the state to operate a daycare center. The complaint stated that the only purpose of allegedly obtaining a license to operate a daycare center was to force Dearl from his home.

¶ 12 The complaint next alleged that the Coffmans installed an elaborate camera system pointed directly towards the Hawkinses' home. On December 25, 2019, Coleton drove on a road, which the Hawkinses believed was on their property, to see whether a birdhouse actually contained a camera pointing directly towards the Hawkinses' home. The Coffmans immediately contacted Sheriff Stevenson and requested that Coleton be arrested and charged with trespassing. A copy of the arrest report, which will be discussed in more detail in our analysis, was attached as an exhibit to the complaint. The complaint went on to state that when the Hawkinses repeatedly reported Jason for trespassing on the Hawkinses' private road, no charges were brought against Jason and Dearl was informed to obtain a survey to establish that the Hawkinses actually owned the property.

¶ 13 Based on the above, the initial complaint contained the following counts:

Count I: False Imprisonment/False Arrest, brought by Dearl against all the defendants except Cripps, based upon Dearl being deprived of his right to reside in his home;

Count II: False Arrest, brought by Michelle against all the defendants except Cripps, based upon Michelle's loss of liberty to reside with her husband;

4

Count III: False Imprisonment/False Arrest, brought by Coleton against the defendants Jason Coffman, Kimberly Coffman, and Richard Stevenson, for the arrest and charge of trespass;

Count IV: Malicious Prosecution, brought by Dearl against all the defendants except Garden, based upon the criminal charge against Dearl for the offense of being present within a school zone as a child sex offender;

Count V: Declaratory Action, brought by Dearl against Richard Stevenson and Marion County, Illinois, alleging that the amendments to the "Child Sex Offender Act (720 ILCS 5/11-1 *et seq.* (West 1996))," that occurred after December 19, 1997, as applied to Dearl, is void as an *ex post facto* law in violation of the Illinois Constitution; and

Count VI: Invasion of Privacy and Eavesdropping, brought by Dearl and Michelle against the Coffmans, for the installation of the camera system with audio and video directed at the Hawkinses' home and property.

¶ 14   On April 13, 2020, the Coffmans filed a motion to dismiss the plaintiffs' complaint, and the Marion defendants filed a motion to dismiss on April 20, 2020. In response, the plaintiffs filed a motion for leave to file a first amended complaint on August 7, 2020, and an amended motion for leave to file a first amended complaint on August 11, 2020. The circuit court granted the plaintiffs' amended motion for leave on August 12, 2020.

¶ 15   The plaintiffs' first amended complaint mirrored all of the previous allegations but also added that Dearl, prior to the school banquet, had been granted permission to be on the school's grounds by the principal. That permission included the right to be on the school's grounds to coach girls' softball games, and he had previously been on the school's grounds on numerous occasions based on that permission.

¶ 16   The first amended complaint also added that both Kimberly and Jason were employed full-time outside of their home, and that at a hearing in Marion County on February 11, 2020, Kimberly admitted that she only had two children at her daycare center, a brother and a sister. The children were at the daycare two days per week, from approximately 5:30 a.m. until 8 a.m., when they left

5

for school. Kimberly also admitted that the parents of these children did not pay for this service since they were friends of the Coffmans. As such, the first amended complaint alleged that the daycare center was a "sham" for the sole purpose of preventing Dearl from residing in his home. The plaintiffs' first amended complaint went on to add the general allegation that, "After the Coronavirus became a significant public health issue, Dearl resumed residing in his home, because he did not want to risk infecting his elderly parents with the Coronavirus."

¶ 17    The first amended complaint also modified count II from a claim of false arrest to a claim of the intentional infliction of emotional distress based upon Michelle's inability to reside with her husband. It also added Garden as a defendant in count V, the declaratory action, and dropped the eavesdropping allegations from count VI.

¶ 18    The Marion defendants filed a motion to dismiss the plaintiffs' first amended complaint on August 31, 2020, and the Coffmans filed a motion to dismiss on September 10, 2020. On January 8, 2021, the circuit court issued a written order that denied the Coffmans' motion in its entirety, but granted the Marion defendants' motion in part. The circuit court dismissed count V, the declaratory action, based on the circuit court's determination that no actual controversy existed between the parties in this action regarding the constitutionality of any statutory amendments.

¶ 19    The matter proceeded in discovery for several years and on April 13, 2023, the Coffmans filed a motion to compel and for sanctions. According to the Coffmans' motion, the plaintiffs' depositions were scheduled, by agreement, for March 1, 2023, but only Dearl's deposition was actually conducted. The motion stated that Michelle left during Dearl's deposition and that Coleton did not appear due to work obligations. The motion further stated that Michelle's and Coleton's depositions were rescheduled at a later date, agreed to by the parties, but were canceled the day prior without reasonable justification. As such, the motion requested that the circuit court compel

6

Michelle and Coleton to appear for their depositions within 14 days or be barred from presenting evidence or testifying at trial. The motion also requested sanctions in the form of costs and attorney fees.

¶ 20    The next day, on April 14, 2023, the Coffmans also filed a motion for summary judgment on counts I, II, III, IV, and VI. On May 11, 2023, Michelle moved to voluntarily dismiss her claims against all the defendants. The circuit court dismissed Michelle's claims against the defendants, without prejudice, on May 12, 2023, and as a result, count II of the plaintiffs' first amended complaint was dismissed in its entirety.

¶ 21    The circuit court conducted a hearing on the Coffmans' motion for summary judgment on October 4, 2023. The circuit court noted that all the depositions had been conducted so the Coffmans' motion to compel was moot. The motion for sanctions, however, was still pending and would be addressed at a later time. The circuit court denied summary judgment on count I, finding that there remained a genuine issue of material fact related to the daycare center, the motivation for licensure, and what was specifically reported to law enforcement. The circuit court did not address count II, noting that it had already been voluntarily dismissed. Concerning count III, the circuit court found that the Coffmans had reported what they had visually seen on their camera, that the police had investigated, and that although there may not have been a previous notification, there was probable cause that the trespass occurred. The circuit court granted summary judgment on count III.

¶ 22    On count IV, the circuit court found that there was no malicious prosecution since Dearl was a child sex offender by statute, with the restrictions, and again, the Coffmans had only reported what they had observed. The circuit court granted summary judgment on count IV. Finally, on count VI, the circuit court found that, although not neighborly, case law clearly indicated that there

7

was no invasion of privacy since the camera was pointed along the property line and not at windows or behind a privacy fence where there would be a protected privacy interest. As such, the circuit court granted summary judgment on count VI.

¶ 23    The Marion defendants filed a motion for summary judgment on October 25, 2023. The circuit court conducted a hearing on November 22, 2023, and again granted summary judgment on all counts, except count I. The Marion defendants filed a motion to reconsider the denial of summary judgment as to count I on December 28, 2023, and the Coffmans filed their motion to reconsider on December 29, 2023.

¶ 24    On January 8, 2024, the plaintiffs filed a motion for leave to file a second amended complaint. The counts in the proposed second amended complaint mirrored the first amended complaint, but had annotations within counts II through VI, indicating that the counts had been dismissed, either voluntarily or involuntarily. The annotations also stated that the plaintiffs did not wish to waive their right to appeal the involuntarily dismissed counts by deleting them from the second amended complaint.

¶ 25    The most significant modification within the proposed second amended complaint was the addition of count VII, against the Coffmans. Count VII alleged that Dearl had a trained and certified service dog and that on December 12, 2023, Jason shot Dearl's service dog in the head with a shotgun. The dog survived but was no longer capable of performing as a service dog and Dearl incurred more than $800 in veterinary bills.

¶ 26    A pretrial hearing was conducted on January 10, 2024. At the beginning of the hearing, the circuit court heard arguments on the defendants' motions to reconsider and denied both motions. The defendants then argued against allowing the plaintiffs leave to file a second amended complaint. The defendants argued that it would be highly prejudicial after three years of discovery

8

for the plaintiffs to be permitted to add an additional count, especially since the case was ready to go to trial and the new claim did not involve all the defendants. After hearing arguments, the circuit court granted the plaintiffs' motion for leave to file a second amended complaint, subject to the previous dismissal orders. The trial court further indicated that count VII would be tried separately from the remaining count I. At this hearing, the Coffmans also withdrew their motion for sanctions.

¶ 27    The Coffmans filed a motion to sever counts I and VII on April 2, 2024. The Coffmans' motion stated that the circuit court had previously indicated that the counts would be tried separately, but that severance was needed in order for Coffmans' counsel to continue representing the Coffmans on count I, but not on count VII. Coffmans' counsel also filed a motion to withdraw his representation of the Coffmans on count VII. On April 16, 2024, the circuit court granted counsel's motion to withdraw as to count VII, but denied the motion to sever citing its prior ruling that counts I and VII would be tried separately.

¶ 28    On August 9, 2024, the circuit court entered a docket entry stating that it had, *sua sponte*, reviewed the file and determined that it was appropriate to revisit the previous motions for summary judgment and motions for reconsideration prior to trial. The docket entry also stated that the circuit court had vacated the trial setting.

¶ 29    At a hearing on August 14, 2024, the parties acknowledged receipt of the docket entry. The circuit court then went back through the procedural history of the case and noted that the circuit court could reconsider summary judgment at any time prior to the final judgment. The circuit court stated that it was reconsidering its ruling on count I and allowed the parties to present arguments. After arguments, the circuit court stated that it had reviewed the statute that restricts sex offenders on where they may reside and be present. The circuit court also stated that it had reviewed all of the statutes and the jury instructions. The circuit court stated that upon investigation, "it would

9

have become very clear that [the Coffmans] is not a day care home." The circuit court also stated, "I don't believe I could have ever found probable cause ***."

¶ 30　The circuit court went on to state, however, that from all the cases it had reviewed, "restraint in those cases involved some form of detention, a detainment either by law enforcement or someone acting as law enforcement." While there is no civil jury instruction on restraint, the circuit court noted that there were criminal instructions that would be edifying to consider, and that "clearly in each one of the instances where it is defined in criminal court [it] is defined as a detainment or a detention, restriction on movement."

¶ 31　The circuit court then found as follows:

"I don't think upon review that there is any genuine issue of material fact. I don't think the letter that was provided suggested there could be enforcement, it does not say arrest and prosecution. It says that we will seek enforcement. They didn't seek enforcement. In fact, there was no detention, no detainment for interview, and no arrest.

Having rereviewed the cases, the law, and also factoring in the Court's review of the jury instructions in preparation of trial, I now find there is no genuine issue of material fact as it relates to Count I."

¶ 32　Summary judgment was then granted on count I. The plaintiffs' counsel orally requested an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) ruling. The circuit court granted the motion and entered a written order the same day, finding no just reason to delay the appeal of the rulings on counts I, III, IV, V, and VI. The plaintiffs filed a timely notice of appeal on August 19, 2024, and an amended notice of appeal on August 28, 2024.

10

¶ 33                                    II. ANALYSIS

¶ 34    On appeal, the plaintiffs challenge the circuit court's grant of summary judgment on counts I, III, IV, and VI. They do not challenge the circuit court's dismissal of count V, the declaratory action. Before proceeding with our analysis, however, we note that the supplemental appendix to the Coffmans' appellee brief fails to comply with Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019). Rule 342 provides that an appellee brief may include a supplementary appendix containing other materials "from the record" that are also the basis of the appeal or essential to an understanding of an issue raised on appeal. *Id.*

¶ 35    The Coffmans' supplemental appendix to their appellee brief contains no citations to the record. Pleadings, exhibits, or other materials not in the record may not be placed before this court in an appendix. *Waukegan Hospitality Group, LLC v. Stretch's Sports Bar & Grill Corp.*, 2024 IL 129277, ¶ 20. This court will not search the record on appeal to determine whether the exhibits contained in an appellee's supplement appendix are part of the record. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (reviewing court will not serve as an advocate for the appellee or be required to search the record). Therefore, any citation to the supplemental appendix within the Coffmans' appellee brief will be disregarded unless supported by a citation to the record on appeal.

¶ 36    Summary judgment is proper when the pleadings, affidavits, depositions, admissions, and exhibits on file demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 38-39 (2003). A question of fact is material if it is relevant to one of the controlling issues in the case. *Irvin v. Southern Illinois Healthcare*, 2019 IL App (5th) 170446, ¶ 42. We review the grant of summary judgment *de novo* and in the light most favorable to the

11

nonmoving party. *Forsythe v. Clark USA*, *Inc.*, 224 Ill. 2d 274, 280 (2007). Although the party opposing summary judgment does not need to prove his or her case, he or she must provide some factual basis that would arguably entitle him or her to judgment under the law. *Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App. 3d 488, 495 (1998). Where the nonmoving party has failed to establish an element of the cause of action, summary judgment is appropriate. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989).

¶ 37                    A. Count I: False Imprisonment/False Arrest

¶ 38    As previously stated, count I is a claim of false imprisonment/false arrest, brought by Dearl against defendants Jason, Kimberly, Stevenson, and Garden, based upon Dearl being deprived of his right to reside in his home. On appeal, the plaintiffs argue that the circuit court erred in changing its ruling and granting summary judgment on count I because there remained an issue of material fact as to whether the Coffmans opened the alleged daycare center for the purpose of filing charges against Dearl. The plaintiffs also argue that the circuit court's determination that the December 6, 2019, letter from Sheriff Stevenson was not a restraint was in error, because it contained the threat of arrest and prosecution. Thus, the plaintiffs argue that there was an issue of fact as to whether Dearl was restrained from residing in his home.

¶ 39    The elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense had been committed by the plaintiff. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 474 (1990). Since Dearl was never arrested for residing near a daycare center, we will focus on the claim of false imprisonment. False imprisonment is an unreasonable restraint of a plaintiff's liberty, against his will, caused or procured by the defendant. *Id.* To prevail on a claim of false imprisonment, a plaintiff must prove both (1) a restraint against his or her

12

personal liberty or freedom of locomotion against their wishes and (2) that the restraint or detention was unreasonable or unlawful. *Irvin*, 2019 IL App (5th) 170446, ¶ 41; *Marcus v. Liebman*, 59 Ill. App. 3d 337, 339 (1978). Unlawful restraint may be effected by words alone, by acts alone, or both. *Lopez v. Winchell's Donut House*, 126 Ill. App. 3d 46, 50 (1984). The evidence must establish a restraint against the plaintiff's will to the threat of force or the assertion of authority. *Id.* at 51. Threats of a future action, however, are insufficient to demonstrate restraint. See *Marcus*, 59 Ill. App. 3d at 340-41.

¶ 40    In this matter, the circuit court granted summary judgment based upon it finding that the letter from Sheriff Stevenson suggested there could be enforcement, but that there was no actual enforcement. Specifically, the circuit court noted that "there was no detention, no detainment for interview, and no arrest." The evidence demonstrated that Dearl stayed with his parents during the evenings, but by his own admissions, was able to be at his home during the day. Further, after an unspecified period of time, Dearl resumed staying at his residence full-time without any consequences.

¶ 41    The letter from Sheriff Stevenson stated that it was "the intentions of this office to enforce the law, which *may* include arrest and/or prosecution ***." (Emphasis added.) The letter also provided a period of time for Dearl to comply before an action, if any, would be taken. As such, we find that the letter was a threat of future action and is insufficient to demonstrate confinement. We further note that in *Bozek v. Bank of America*, 2021 IL App (1st) 191978, ¶ 113, the reviewing court found that "[b]eing kicked out of one's home, but not otherwise restrained or detained, is not false imprisonment ***."

¶ 42    Whether the Coffmans opened the alleged daycare center for the purpose of filing charges against Dearl goes to the second element of whether there was a reasonable belief that an offense

was committed. Since we have found no restraint, we need not address the second element. Accordingly, we find that summary judgment on count I of the plaintiffs' second amended complaint was proper.

¶ 43                    B. Count III: False Imprisonment/False Arrest

¶ 44    Count III is a claim of false arrest/false imprisonment brought on behalf of plaintiff Coleton Downes against defendants Jason, Kimberly, and Sheriff Stevenson. The plaintiffs state that "Coleton was arrested, handcuffed, taken to jail, and incarcerated until he posted a $1,000 bond on a charge of trespass when he unknowingly walked over the unmarked boundary by a few feet to observe the camera in the birdhouse." The plaintiffs argue that there is ample evidence that Coleton was arrested and detained, but that there is no evidence to indicate that the defendants had probable cause to believe that Coleton had committed criminal trespass. As such, the plaintiffs argue that there is genuine issue of material fact as to whether there was probable cause for the Coffmans to call Sheriff Stevenson, and whether Sheriff Stevenson had probable cause, acting through his deputy, to arrest and charge Coleton with criminal trespass. Because there remained a genuine issue regarding probable cause, the plaintiffs argue that the circuit court's grant of summary judgment on count III was in error.

¶ 45    As stated above, the elements of a cause of action for false arrest or false imprisonment are the restraint or arrest of the plaintiff by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense had been committed by the plaintiff. *Meerbrey*, 139 Ill. 2d at 474. The Marion County Sheriff's Office case report (Sheriff's report), attached to the plaintiffs' complaint, clearly indicated that Coleton was arrested, detained, and charged with criminal trespass. Thus, we agree that there was no question of material fact regarding the first element for a claim for false arrest and/or false imprisonment.

14

¶ 46    We next need to determine whether there was a reasonable ground to believe that an offense had been committed by Coleton. Probable cause has been defined as a state of facts which, if known, would lead a person of ordinary caution and prudence to believe or entertain a strong and honest suspicion that the person detained was guilty of an offense. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 63. "The existence of probable cause is a question of law and only becomes a question of fact if the operative facts are in dispute." *Id.*

¶ 47    A person commits criminal trespass to real property when he or she "(2) enters upon the land of another, after receiving, prior to the entry, notice from the owner or occupant that the entry is forbidden." 720 ILCS 5/21-3(a)(2) (West 2018). Notice may be given orally or "if a printed or written notice forbidding such entry has been conspicuously posted or exhibited at the main entrance to the land or the forbidden part thereof." *Id.* § 21-3(b).

¶ 48    The Sheriff's report stated that, on December 25, 2019, Jason telephoned the sheriff's office and reported that someone from the Hawkinses' residence was trespassing on his property. Deputy John Minton was dispatched to the Coffmans' residence and was shown two surveillance videos on Kimberly's cellular telephone. One video was from a camera on the fencerow and the other from a driveway camera. The report stated that the videos displayed a white truck leaving the Hawkinses' driveway and pulling up to the curve between the properties. A male, wearing an orange shirt and black shorts, exited the truck and walked "through the grass on the complainant[']s property and looks at the camera, then the male walks back to the truck and leaves."

¶ 49    The report also indicated that Jason had completed a written statement that he had witnessed someone in an orange sweatshirt on his property, despite the no trespassing signs, and that the person arrived in a white truck that had been at the Hawkinses' residence. Deputy Minton

15

left the Coffmans and went to the Hawkinses' residence where he met with Dearl and Michelle. Dearl identified the male in the white truck as Coleton and the report then stated as follows:

"Dearl and Michelle both said that they told Coleton not to go over to the camera. I asked them how that all came about this morning. Dearl said him and Michelle were inside their house and they were talking about the camera inside the birdhouse in the fencerow. Coleton didn't believe them and said he was going to go look at it. Dearl and Michelle both said they told him not to do it, but he did it anyway."

¶ 50    The report states that Deputy Minton informed Dearl and Michelle that Jason had signed a statement and was pressing charges against Coleton for trespassing. Dearl and Michelle then informed Deputy Minton that Jason continuously trespassed on their property. Michelle filled out a written statement regarding Jason's trespassing and Dearl "asked if [Deputy Minton] would bring that up to Jason. I told him that I would." Deputy Minton returned to the Coffmans to discuss that allegation. The report states that Jason informed Deputy Minton that "it was a civil issue and they would have to go to court." Deputy Minton then informed Jason that the ground would need to be surveyed and they would proceed from there. The final entry on the Sheriff's report stated that Coleton came down to the Marion County Sheriff's Office that evening, was arrested, and posted bond on criminal trespass to property.

¶ 51    In assessing probable cause to arrest, the determination is based on the totality of the circumstances and the facts known to the police at the time of arrest. *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 112. "Errors that are not grossly negligent do not affect the probable cause inquiry when the complainant has an honest belief that the accused is probably guilty of the offense." *Id.* Although the plaintiffs now argue that Coleton unknowingly walked over the

16

unmarked boundary and that he had not received prior notice that entry was forbidden, it is not the facts known to Coleton at the time of the offense that are relevant. Instead, it is the circumstances and facts known to Deputy Minton at the time Coleton came to the police station and was arrested.

¶ 52 When Deputy Minton spoke with the Coffmans, they produced two videos of an individual on their property. Jason also executed a statement that the property belonged to the Coffmans and was marked by no trespassing signage. When Deputy Minton spoke with Dearl and Michelle, they indicated that the individual in the video was Coleton. They did not state that it was their belief that they owned the property on which Coleton had been walking, nor did they dispute that Coleton was on the Coffmans' property. Instead, they informed Deputy Minton that "they told him not to do it, but he did it anyway."

¶ 53 As the circuit court indicated, there may be a question of whether Coleton had prior notice prohibiting his entry onto the Coffmans' property; however, whether Coleton actually had prior notice is not a question of material fact concerning what was known to the police at the time of Coleton's arrest. See *People v. Wetherbe*, 122 Ill. App. 3d 654, 658 (1984) (probable cause to believe the defendant committed criminal trespass to land despite the lack of the notice required by the statute). The information obtained by Deputy Minton would lead a person of ordinary caution and prudence to believe or entertain a strong and honest suspicion that Coleton was guilty of the offense of trespass at the time of his arrest. As such, we find that the police had sufficient probable cause that Coleton committed the offense of criminal trespass at the time of his arrest and that summary judgment was proper on Coleton's claim of false arrest against Sheriff Stevenson. Further, although Coleton's arrest resulted in a restraint of his personal freedom against his will, we find that his claim of false imprisonment against Sheriff Stevenson must also fail since there were reasonable grounds to believe that an offense was committed.

17

¶ 54    Coleton's claim of false arrest/false imprisonment against the Coffmans must also fail for the same reason. Although the Coffmans played a significant role in Coleton's arrest, there is nothing to indicate that they provided misinformation or concealed any exculpatory evidence when reporting the incident to the sheriff's office. See *Dutton v. Roo-Mac, Inc.*, 100 Ill. App. 3d 116, 119 (1981) ("the mere act of giving information to the police is insufficient in itself to constitute participation in an arrest"). There is also no evidence that the Coffmans did not have a reasonable belief or probable cause that an offense had been committed. The Coffmans' reasons for reporting Coleton's action to the police are irrelevant as malicious or bad-faith conduct is not a consideration in evaluating a false arrest/false imprisonment claim. See *Shelton v. Barry*, 328 Ill. App. 497, 506 (1946) (imprisonment under legal authority may be malicious, but it cannot be false). Accordingly, we find that summary judgment was proper on count III.

¶ 55                    C. Count IV: Malicious Prosecution

¶ 56    In count IV, Dearl brings a claim of malicious prosecution against defendants Jason, Kimberly, Stevenson, and Cripps, based upon the criminal charge against Dearl, as a convicted sex offender, for being present within a school zone without prior permission. The plaintiffs argue that Dearl had received a written invitation to the event and had previous authority from the principal "to park his truck several nights each week on the school grounds." The plaintiffs further argue that Dearl had retained an attorney and had attended at least three hearings before the State dismissed the criminal charge by falsely claiming that its key witness, Deputy Cripps, was unavailable. As such, the plaintiffs argue that there are "disputed facts" on whether there was probable cause to charge Dearl with knowingly and unlawfully being present within a school zone as a convicted child sex offender.

¶ 57    To succeed on a claim for malicious prosecution, a plaintiff must show (1) the commencement or continuance of an original criminal or civil judicial proceedings by the defendant, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause, (4) malice, and (5) damages. *Gauger*, 2011 IL App (2d) 100316, ¶ 99. The failure to demonstrate any one of the foregoing elements precludes recovery for malicious prosecution. *Id.* Provided that all of the elements are met, the liability for malicious prosecution extends to all individuals who played a significant role in causing the prosecution of the plaintiff. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 79. A significant-role determination must include those individuals who improperly exerted pressure on the prosecutor, concealed exculpatory information, knowingly provided misinformation, or otherwise engaged in wrongful or bad-faith conduct that was instrumental in the commencement or continuation of the criminal prosecution. *Id.*

¶ 58    The circuit court granted summary judgment based on a finding that there "was no malicious prosecution since Dearl was a child sex offender by statute, with the restrictions, and again, the Coffmans had only reported what they had observed." In other words, the circuit court found that the plaintiffs failed to establish the element that there was the absence of probable cause.

¶ 59    Probable cause acts as a complete defense in an action for malicious prosecution, no matter what ill motive incited the prosecution. *Ely v. National Super Markets, Inc.*, 149 Ill. App. 3d 752, 758 (1986). The assessment of probable cause, in an action for malicious prosecution, depends upon the totality of the circumstances existing when the defendants commenced the prosecution. *Beaman*, 2011 IL 125617, ¶ 117. As previously stated, whether the circumstances establishing probable cause are true is a question of fact, but whether the circumstances amount to probable cause is a question of law. *Grundhoefer v. Sorin*, 2018 IL App (1st) 171068, ¶ 14.

¶ 60 Section 11-9.3 of the Criminal Code of 2012 (720 ILCS 5/11-9.3(a) (West 2018)) states as follows:

> "It is unlawful for a child sex offender to knowingly be present in any school building, on real property comprising any school, *** when persons under the age of 18 are present in the building *** unless the offender is a parent or guardian of a student attending the school and the parent or guardian *** has permission to be present from the superintendent or school board or in the case of a private school from the principal. In the case of a public school, if permission is granted, the superintendent or school board president must inform the principal of the school where the sex offender will be present."

¶ 61 Here, the plaintiffs argue that there are "disputed facts" on whether there was probable cause to charge Dearl with knowingly and unlawfully being present within a school zone as a convicted child sex offender. The facts are not in dispute, so it becomes a question of law concerning whether the circumstances amount to probable cause.

¶ 62 The plaintiffs' own pleadings state that Dearl had been convicted of a child sex offense in 1997, and was at the Raccoon Elementary School on May 10, 2019, for an event along with 350 other people. It is irrelevant that Dearl had received a written invitation to the awards event or that he had previous authority from the school principal. As stated above, permission for Dearl to be present at the school had to be granted by the superintendent or the school board since Raccoon Elementary was a public school. The principal had no authority to grant Dearl the right to attend the event or to be on the school grounds. There is also no indication that the written invitation sent to Dearl was from the superintendent or the school board and specifically granted Dearl permission to attend the event.

¶ 63    Probable cause exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred. *Holt v. City of Chicago*, 2022 IL App (1st) 220400, ¶ 68. It is a common-sense inquiry that only requires a probability of criminal activity. *Id.* Although Dearl may be able to establish the other elements for a claim of malicious prosecution, including malice, we agree with the circuit court that he could not establish the element of an absence of probable cause. Accordingly, Dearl's claim of malicious prosecution must fail, and we find that summary judgment on count IV was proper.

¶ 64                    D. Count VI: Invasion of Privacy

¶ 65    The final issue within this appeal is whether the circuit court erred in granting summary judgment on count VI of the plaintiffs' first amended complaint. Count VI alleged that the Coffmans intruded upon the seclusion of the Hawkinses, and their immediate family, by installing a camera and video recording system directed at the Hawkinses' home. The plaintiffs state that there was more than one camera directed at the Hawkinses' residence that recorded all outdoor activities and visitors to their home. Based on the 24-hour-a-day surveillance, the plaintiffs argue that the Coffmans regularly complained to the sheriff's office resulting in the sheriff's office unsuccessfully prosecuting Dearl for a crime. As such, the plaintiffs allege that the camera and recording system was an intrusion upon their seclusion such that the circuit court erred in granting summary judgment on count VI.

¶ 66    There are four ways to state a cause of action for the invasion of privacy: (1) intrusion upon the seclusion of another, (2) appropriation of another's name or likeness, (3) public disclosure of private facts, and (4) publicity placing another in a false light. *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71 (2004). Here, the plaintiff is alleging the intrusion upon seclusion. The core of intrusion upon seclusion is the offensive prying into the private domain of another. *Lovgren v.*

21

*Citizens First Nation Bank of Princeton*, 126 Ill. 2d 411, 417 (1989). To establish the tort of intrusion upon seclusion, a plaintiff must demonstrate (1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) an intrusion that is highly offensive to a reasonable person, (3) the matter upon which the intrusion occurs is private, and (4) the intrusion causes anguish and suffering. *Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1030-31 (2002). The third element of private matters must be alleged because without private matters, the other three elements of the tort need not be addressed. *Busse*, 351 Ill. App. 3d at 71-72.

¶ 67     Instructive on this issue is the case of *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 437 (2005), as the facts in that matter are extremely similar to this case. *Schiller* was a case of two neighbors, where one neighbor had a camera directed at the "garage, driveway, and side-door area" of the other neighbor's home. *Id.* The camera recorded the other neighbor's property 24 hours a day and included the interior of the neighbor's garage. *Id.* Also similar was the fact that the neighbor made continuous complaints to the police about the activities of the other neighbor that resulted in 14 tickets, of which the other neighbor was only liable for three, and two misdemeanor charges, one dismissed by the state's attorney and one directed verdict in favor of the other neighbor. *Id.* at 437-38.

¶ 68     The *Schiller* court found that the plaintiffs' claim of intrusion on seclusion failed to state a cause of action because the areas photographed by the camera were not private. *Id.* at 439. The court stated that the "complaint does not explain why a passerby on the street or a roofer or a tree trimmer could not see what the camera saw, only from a different angle."

¶ 69     Here, the circuit court noted in its ruling that individuals were permitted to have security cameras so long as they were not directed at an area of expected privacy, such as the interior of a

home or a fenced yard. The circuit court further found that, "whether we think it's appropriate or not," it was not an invasion of privacy. We agree.

¶ 70     While we believe that the Coffmans' surveillance would be highly offensive to a reasonable person, we find that the plaintiff has failed to establish the element that the matter upon which the intrusion occurred was private. The Hawkinses state that the cameras were pointed at their home, but they do not claim that the cameras captured any activities within the home. The plaintiffs also fail to allege that any section of their property was enclosed or so removed such that it could not be viewed by the public. We also note that the Sheriff's report stated that when the Hawkinses complained about the Coffmans' camera, Deputy Minton "explained to [Dearl and Michelle] that it was not a zoomed camera view and that it was not looking in their windows and such. I told them that I could barely make out vehicles parked in their driveway."

¶ 71     As noted by the circuit court, in today's society, many homes now have security cameras that capture portions of neighboring properties. While there may be a question of fact regarding whether the installation of the Coffmans' cameras was for the purpose of security or the harassment of the plaintiffs, we find that the plaintiffs failed to establish the third element that the matter upon which the intrusion occurred was private. Accordingly, we find that summary judgment was appropriate on count VI.

¶ 72     We have reviewed the circuit court's grants of summary judgment *de novo* and in the light most favorable to the plaintiff. We find no error in the circuit court's granting of summary judgment on count I, where there was no actual restraint; on counts III and IV, where there was probable cause to believe the offenses were committed; and on count VI, where there was no invasion of privacy because the cameras were not directed at an area of expected privacy. Therefore, the defendants were entitled to the judgments as a matter of law.

23

¶ 73                                III. CONCLUSION

¶ 74    Based on the foregoing, we affirm the judgments of the circuit court of Marion County

granting summary judgment on counts I, III, IV, and VI.

¶ 75    Affirmed.